Pinkie MUMFORD, Plaintiff-Appellant,

v.

Otis R. BOWEN, M.D., Secretary, United States Department of Health and Human Services, Defendant-Appellee.

No. 86–1101.

United States Court of Appeals,
Seventh Circuit.

Submitted Oct. 9, 1986.*

Decided Oct. 29, 1986.**

Opinion March 16, 1987.

Leonard Murray, Chicago, Ill., for plaintiff-appellant.

Robert T. Grueneberg, Asst. U.S. Atty., Anton R. Valukas, U.S. Atty., Joan Leese Lowes, Asst. Reg. Atty., Dept. of Health & Human Services, Chicago, Ill., for defendant-appellee.

Before CUMMINGS, WOOD, and CUDAHY, Circuit Judges.

CUMMINGS, Circuit Judge.

Plaintiff, Pinkie Mumford, appeals the denial of her motion to reopen a judgment

---

* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R. App.P. 34(a); Circuit Rule 14(f). No such state-ment having been filed, the appeal has been submitted on the briefs and record.

** This appeal was originally decided by unreported order on October 29, 1986. See Circuit Rule 35. The Court has subsequently decided to issue the decision as an opinion.

on the grounds of newly discovered evidence under Rule 60(b)(2). We affirm.

## I.

Mrs. Mumford's first contact with the defendant occurred when, several months prior to her sixty-fifth birthday, she inquired about social security retirement benefits. The Social Security Administration (SSA) informed her of the estimated amount of her monthly benefit and advised her to contact the SSA office to apply. After her birthday, sometime in April, 1978, Mumford went to the local SSA office. At that time, she did not have acceptable proof of her age. An SSA employee therefore provided an address in Georgia where Mumford could write to obtain a copy of her birth certificate. Near the end of 1978, Mumford telephoned the SSA office and informed an employee that she had not yet received proof of her age. After further waiting, in February, 1979, Mumford received a letter from the Georgia Department of Human Resources informing her that no record of her birth appeared in its files. Mumford informed the local SSA office and was told that the office would obtain her marriage license as proof of her age. Finally, on September 29, 1981, Mumford once again visited the SSA office. By this time, the office had obtained a copy of her marriage license and Mumford filed an application for retirement benefits.

Based on her September 29, 1981 application, the Secretary of Health & Human Services determined that Mumford was entitled to benefits beginning in March, 1981. Arguing that she had applied in April of 1978, and was therefore entitled to benefits beginning in that year, Mumford pursued administrative remedies. In a final decision on her claim, the Secretary rejected Mumford's argument and found her entitled to benefits only from March, 1981.

Plaintiff sought review of the Secretary's decision in the district court. The district court granted the Secretary's motion for summary judgment in an order filed September 12, 1985. On November 12, 1985, Mumford filed a "Motion for Reconsideration and for Leave to Open the Administrative Record."

Plaintiff's motion was based on a July 25, 1985 television program, called "20/20", that allegedly reported problems with the computer system used by the defendant. Plaintiff alleges that the program reported that the unreliability of the computer system had resulted in lost records and other administrative problems. At the administrative hearing before the ALJ in June, 1983, Faye McDonald, district manager of the local SSA office, testified that the defendant's computer records would reflect any application filed prior to September, 1981. McDonald, by letter to the ALJ, then verified that a thorough search of the computer records disclosed no application by Mumford prior to that time.

After a hearing, the district court denied Mumford's motion. Mumford appealed both the granting of summary judgment and the order denying her Rule 60(b) motion. This court granted the Secretary's motion to dismiss Mumford's appeal from the order granting summary judgment. Before us now is Mumford's appeal from the denial of her Rule 60(b) motion.

## II.

Rule 60(b)(2) provides that the court may relieve a party from a final judgment on the grounds of "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." Fed.R.Civ.P. 60(b)(2). The only question for this court is whether the district court abused its discretion in declining to reopen the judgment based on the "new evidence" of the "20/20" program. *Browder v. Director, Department of Corrections*, 434 U.S. 257, 263 n. 7, 98 S.Ct. 556, 560 n. 7, 54 L.Ed.2d 521 (1978); *Metlyn Realty Corp. v. Esmark, Inc.*, 763 F.2d 826, 831 (7th Cir.1985). To find an abuse of discretion, we must conclude that "no reasonable man could agree with the district court." *Metlyn Realty*, 763 F.2d at 831.

■ We have held that the prerequisites of Rule 60(b)(2) relief are:

1) the evidence was in existence at the time of trial or pertains to facts in existence at the time of trial;

2) it was discovered following trial;

3) due diligence on the part of the movant to discover the new evidence is shown or may be inferred;

4) the evidence is admissible;

5) it is credible;

6) the new evidence is material;

7) it is not merely cumulative or impeaching; and, finally,

8) the new evidence is likely to change the outcome.

*Peacock v. Board of School Comm'rs*, 721 F.2d 210, 213–14 (7th Cir.1983) (per curiam); *U.S. v. Walus*, 616 F.2d 283, 287–88 (7th Cir.1980).

From the record, it is not at all clear precisely what the "new evidence" here consists of.[1] Plaintiff, in her brief, urges that the evidence is not the television program itself, but statements made by defendant's staff acknowledging the computer problems, as well as the results of investigations into the problems, that were reported during the program.[2] For purposes of this order, we will assume that this characterization is correct and ignore the obvious problems of admissibility in order to move on to the remaining requirements for Rule 60(b)(2) relief.

▮ Plaintiff's motion first runs aground on the requirement, explicit in Rule 60(b)(2) itself, of due diligence. On that issue, plaintiff argues that since Faye McDonald acknowledged no computer problems in her testimony before the ALJ, it was impossible for plaintiff to discover such problems prior to the "20/20" broadcast. But, at the hearing, there was extensive testimony by McDonald regarding the processing of applications, retention of computer records, the possibility of lost or misplaced paper files, and the possible loss

of a few 1981 applications due to a fire in January of 1981. Although Ms. McDonald was not specifically questioned about possible loss of computer records due to computer problems, she did testify that any application would be entered into the computer, a computer record would then be maintained in perpetuity, and finally, that a search of the computer files had uncovered no application made by plaintiff in 1978. If plaintiff did file an application in 1978, this sequence of testimony must certainly have suggested to her that either the paper application was lost before it was entered into the computer or the computer record was somehow lost. Plaintiff offers no explanation of why it was impossible for her to obtain statements of members of defendant's staff, or similar evidence, acknowledging such problems at the time of the hearing or at least in time to move for a new trial under Rule 59(b).[3]

Plaintiff's only other argument on the issue of due diligence is that as soon as she or her counsel became aware of the television broadcast, she filed her Rule 60(b) motion. The "20/20" program was televised on July 25, 1985; judgment was entered on September 12, 1985; and plaintiff states that she or her attorney learned of the program only during the following November and filed the Rule 60(b) motion on November 12. Apparently, plaintiff claims that the contents of the broadcast *were not* discovered in time to move for a new trial under Rule 59(b), but she offers no explanation why they *could not* have been discovered, as required by Rule 60. As the 10th Circuit has pointed out, lack of knowledge is not enough; the plaintiff must show that her lack of knowledge was not due to her lack of diligence. *Valmont Industries, Inc. v. Enresco, Inc.*, 446 F.2d 1193, 1194 (10th Cir.1971), *cert. denied*, 405

---

**1.** In fact, it appeared that no one present at the hearing on the Rule 60 motion, including plaintiff and her attorney, had actually seen the "20/20" program, and plaintiff offered no documentation of the contents of the program.

**2.** At another point, plaintiff suggests that awareness of computer problems in the system in

general would have led her to obtain an "audit trail" for the local SSA office. *See infra* at 6.

**3.** Fed.R.Civ.P. 59(b) requires that a motion for a new trial be made within ten days after entry of judgment.

U.S. 922, 92 S.Ct. 960, 30 L.Ed.2d 793 (1972).

Finally, and most fundamentally, judgment will not be reopened under Rule 60(b)(2) unless the newly discovered evidence is such that the outcome would probably change on retrial. "[T]he fundamental purpose of the Rule 60(b) motion is to prevent the judgment from becoming a vehicle of injustice." *Walus,* 616 F.2d at 288. Thus, although "our review is confined to a determination of whether the district court has abused its discretion, ... [t]he strength or weakness of the evidence against the [plaintiff] is an important and often decisive factor in judging the new evidence." *Id.*

Here, plaintiff, in her brief in support of this appeal, claims that the outcome of her case would likely change. She reasons that now that she is aware of the existence of computer problems, she could obtain an "audit trail" for the local SSA office, for the period of April, 1978, which might show discrepancies between existing computer records and input. Such an "audit trail", not to mention any discrepancies it might disclose, is sheer speculation. Thus, plaintiff has offered no evidence of the loss of the record of her application in particular.

As stated above, viewed in the kindest possible light, the "new evidence" plaintiff has discovered consists of statements of members of defendant's staff concerning general problems with the computer system used by defendant. These statements could, at most, cast doubt on the accuracy of defendant's computer records and the results of Ms. McDonald's computer search. While McDonald's testimony and her letter verifying the results of her search were referred to by the Magistrate in the report and recommendation adopted by the district court in granting summary judgment for the defendant, they were only part of the evidence against the plaintiff.

The requirements for entitlement to retirement benefits, set out by statute and implementing regulations,[4] include the filing of an application. Plaintiff produced no evidence at all that she had filed an application in April, 1978. On the contrary, Mumford herself testified before the ALJ that she could not remember "filing" or "signing" an application in 1978, nor could she remember anyone ever telling her prior to 1981 that she had "applied" or "signed up" for benefits. Although there was evidence that the application may have been filled out by an SSA employee and also that claimants sometimes forget prior applications, on plaintiff's 1981 application, the box next to the question whether claimant or someone on her behalf had previously filed for benefits was checked "no". Mumford also testified that she had continued to be self-employed in a small upholstery and drapery shop between 1978 and 1981. The ALJ believed this fact helped to explain why Mumford would not apply for retirement benefits prior to 1981. At best, plaintiff produced evidence only of her several contacts with the SSA office prior to 1981 and of her intent to file an application for benefits,[5] which is not enough to satisfy the statute and regulations.[6]

---

4. See 42 U.S.C. § 402(a); 20 C.F.R. § 404.603 (1984).

5. In fact, plaintiff at one time seems to have conceded this point. Plaintiff in her original complaint claimed that she had filed an application in April, 1978, and in her Rule 60 motion, alleging that the "20/20" program provided an explanation why there was no record of her application, she apparently reasserts that original claim. Yet, plaintiff's "Objection to Report and Recommendation of Magistrate James T. Balog" concludes, "it was her intent to file for retirement benefits in April, 1978 and she was prevented from doing so do [sic] to the absence of proof of age and acts and doings of the Secretary ... because of this fact.... And, that it would be inequitable for the Secretary to use the written application rule under such circumstances." The district court apparently rejected this argument in adopting the Magistrate's report and recommendation, which cited *Cheers v. Secretary of Health, Education and Welfare,* 610 F.2d 463, 466 (7th Cir.1979), in which this court upheld the validity of the Secretary's regulation requiring a written application. A reiteration of this same argument was the main substance of plaintiff's argument to the district court at the hearing on her Rule 60(b) motion.

6. The date of a written statement indicating the intent to claim benefits can be used as the date of application. 20 C.F.R. § 404.630. Here, however, there is no claim that plaintiff ever put her intent in writing.

Thus, even if any testimony concerning computer records were negated by plaintiff's new evidence and it were established that an application made by plaintiff in April, 1978 could have been lost after entry into the computer system, there would simply be no evidence, not even that of plaintiff's own testimony, that she had in fact met the requirements for eligibility for benefits by filing an application in 1978. Given the weakness of plaintiff's case, it is very unlikely that the outcome would change on rehearing.

Plaintiff has therefore failed to meet the requirements for relief under Rule 60(b)(2). The district court did not abuse its discretion in denying plaintiff's motion.

AFFIRMED.