87 F.3d 1315
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Donnie B. ADKINS, Petitioner-Appellant,
v.
KENTLAND ELKHORN COAL CORP.,
and
Director, Office of Workers' Compensation Programs, United
States Department of Labor, Respondents-Appellees.
 No. 95-3122.
 United States Court of Appeals, Sixth Circuit.
 June 3, 1996.
 
 Before: MERRITT, Chief Judge; MILBURN, Circuit Judge; and ZATKOFF, District Judge*.
 MILBURN, Circuit Judge.
 
 
 1
 Claimant Donnie B. Adkins petitions for review of a decision and order of the Benefits Review Board ("BRB") affirming the decisions and orders of two administrative law judges ("ALJs"), which denied his claim for black lung benefits and his motion for modification of the decision and order denying his claim for black lung benefits filed pursuant to the Black Lung Benefits Act ("Act"), 30 U.S.C. § 901, et seq. On appeal, the issues are (1) whether the medical evidence, particularly the reports of Dr. Ameji, Dr. Ladaga, and Dr. Wright, established that petitioner was totally disabled under the Act and entitled to benefits; (2) whether the ALJ erroneously relied on the numerical superiority of the negative reports in denying petitioner a presumption of disability; and (3) whether the BRB erred in affirming the denial of benefits because the ALJ's never adjudicated the claim for benefits under the Part 718 regulations. For the reasons that follow, the petition for review is granted, the prior orders denying benefits is vacated, and the case is remanded to the BRB with instructions.
 
 I.
 A.
 
 2
 Claimant was born on February 16, 1941. He completed his formal education through the fifth grade. He is married to Linda Adkins, and they have one son, Ronnie, who was born on January 18, 1966. At the time of the administrative hearing, claimant resided in Phyllis, Kentucky.
 
 B.
 
 3
 Claimant filed his claim for black lung benefits on October 26, 1978. On April 3, 1980, the Office of Workers' Compensation Programs made an initial finding of entitlement and notified Clinchfield Coal Company that it had been identified as the responsible operator. Subsequently, on May 19, 1980, a second notice of entitlement was issued in which the Office of Workers' Compensation identified Employer, Kentland Elkhorn Coal Company, as the responsible operator. On June 13, 1980, Employer controverted claimant's entitlement to benefits, and the Office of Workers' Compensation subsequently denied the claim. Thereafter, claimant filed a request for an administrative hearing.
 
 
 4
 The claim was referred to the Office of the Administrative Law Judges on August 26, 1981; however, it was remanded to the Office of Workers' Compensation Programs on August 17, 1983, because claimant's administrative file had been confused with the file of another claimant with a similar name. On November 1, 1983, the Office of Workers' Compensation Programs reaffirmed its previous denial of the claim, and claimant requested a hearing on November 4, 1983. The claim was again referred to the Office of Administrative Law Judges on January 13, 1984.
 
 
 5
 A formal hearing before an ALJ was held in Paintsville, Kentucky on May 13, 1986. On December 23, 1986, the ALJ issued a decision and order denying benefits to claimant. In his decision and order, the ALJ credited the claimant with ten years and nine months of qualifying coal mine employment. Accordingly, the ALJ adjudicated the claim for benefits under the regulations at 20 C.F.R. Part 727. Specifically, the ALJ found that claimant was unable to invoke the interim presumption of 727.203(a) by any of the four available methods; namely, that the x-rays, pulmonary function studies, arterial blood gas studies, and physicians' reports were insufficient to invoke the interim presumption under either § 727.203(a)(1), (a)(2), (a)(3), or (a)(4).[1]
 
 
 6
 On January 27, 1987, claimant appealed the denial of his claim for benefits to the BRB. On August 18, 1988, the BRB issued a decision and order affirming the ALJ's denial of benefits. However, on April 26, 1988, prior to the issuance of the BRB's decision, claimant requested modification of the ALJ's decision and order denying benefits under 20 C.F.R. § 725.310. After being informed that claimant had instituted modification proceedings during the pendency of his appeal, the BRB, on October 25, 1988, vacated its decision and order affirming the ALJ's denial of benefits.
 
 
 7
 The Deputy Commissioner denied claimant's request for modification on June 29, 1989, and claimant requested a formal hearing before an ALJ. The matter was referred to the Office of Administrative Law Judges for a formal hearing on September 5, 1989.
 
 
 8
 A formal hearing on claimant's request for modification was held before a different ALJ in Pikeville, Kentucky, on January 8, 1991. Claimant did not appear to testify at that hearing; however, in a letter dated December 3, 1990, he had indicated that he would waive his right to appear at the formal hearing.
 
 
 9
 On January 17, 1991, the ALJ issued a decision and order denying both modification and benefits. At the outset of his decision, the ALJ indicated that he would refuse to consider the reports of Dr. Ameji and Dr. Ladaga as new evidence on the ground that the ALJ believed that claimant had deliberately withheld the evidence until he knew whether or not he would prevail on his claim for benefits. J.A. 66. Claimant had submitted these reports in support of his claim for modification of the denial of benefits. The ALJ then found that the remaining new medical evidence which claimant had submitted did not establish that he was afflicted with pneumoconiosis or that there had been any change in his condition.
 
 
 10
 Claimant timely appealed the second ALJ's denial of modification and benefits to the BRB. In a decision and order issued on September 25, 1992, the BRB vacated the ALJ's decision and order denying benefits and modification and remanded the case for further consideration. Specifically, the BRB found that the ALJ's decision and order was not supported by substantial evidence because the ALJ's decision not to consider the medical reports of Drs. Ameji and Ladaga was an abuse of discretion.
 
 
 11
 On February 1, 1993, the ALJ issued a decision and order on remand, again denying claimant's request for modification and benefits. Thereafter, in a decision and order issued on December 12, 1994, the BRB affirmed both the original ALJ's denial of benefits, dated December 23, 1986, and the ALJ's decision and order on remand denying modification and benefits. Claimant then filed a timely petition for review of the BRB's decision with this court.
 
 II.
 A.
 
 12
 Claimant argues that in his decision and order on remand denying modification and benefits, the ALJ erred in weighing the physicians' reports submitted by claimant in support of his request for modification. Specifically, claimant states that the ALJ
 
 
 13
 stated that he discredited the findings of Dr. Ameji, a well qualified physician and B reader because he ..., after rendering the pertinent opinion, had a temporary restriction on his ability to prescribe medications. The ALJ also discounted the medical opinion of Dr. Ladaga, who found that Petitioner was not capable of performing coal mine employment due to his pneumoconiosis. Further, the ALJ discounted the medical opinion of Dr. Wright, finding [Claimant] totally disabled by pneumoconiosis because, in a later examination, Dr. Wright found him not totally disabled.
 
 
 14
 Appellant's Brief at 4 (internal citations omitted).
 
 
 15
 Our scope of review of decisions of the BRB is limited. A decision of the BRB must be affirmed if the BRB did not commit a legal error or exceed its statutory scope of review of the ALJ's findings. Director, OWCP v. Quarto Mining Co., 901 F.2d 532, 536 (6th Cir.1990). The standards of review for the BRB and this court are the same. Welch v. Benefits Review Bd., 808 F.2d 443, 445 (6th Cir.1986) (per curiam). Thus, our review on appeal focuses on whether the ALJ had substantial evidence on which to base his decision. Zimmerman v. Director, OWCP, 871 F.2d 564, 566 (6th Cir.1989).
 
 
 16
 If the ALJ's findings are supported by substantial evidence and are in accordance with the applicable law, the ALJ's findings are conclusive. Kolesar v. Youghiogheny & Ohio Coal Co., 760 F.2d 728, 729 (6th Cir.1985) (per curiam). Substantial evidence is " 'more than a mere scintilla;' substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Ramey v. Kentland Elkhorn Coal Corp., 755 F.2d 485, 488 (6th Cir.1985) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). In deciding whether the substantial evidence requirement is satisfied, we consider whether the ALJ adequately explained the reasons for crediting certain testimony and evidence over other evidence in the record in deciding to either award or deny benefits. Director, OWCP v. Congleton, 743 F.2d 428, 430 (6th Cir.1984). Finally, when dealing with a claim for benefits, we must keep in mind that the Act is remedial in nature and must be liberally construed "to include the largest number of miners as benefit recipients." Tussey v. Island Creek Coal Co., 982 F.2d 1036, 1042 (6th Cir.1993) (quoting Southard v. Director, OWCP, 732 F.2d 66, 71 (6th Cir.1984)).
 
 
 17
 Furthermore, with regard to claimant's motion for modification,
 
 
 18
 [a] denial of black lung benefits can be reopened within one year upon a showing of a change in the miner's condition or a mistake in a determination of fact. Section 232 of the Longshore and Harbor Workers' Compensation Act so provides, 33 U.S.C. § 922, and this section is incorporated by reference in the Black Lung Benefits Act, 30 U.S.C. § 932(a), and repeated in a regulation under the latter Act, 20 C.F.R. § 725.310.[2]
 
 
 19
 Amax Coal Co. v. Franklin, 957 F.2d 355, 356 (7th Cir.1992).
 
 
 20
 In his decision and order on remand which denied modification and benefits, the ALJ stated that he would "accord neither weight nor credit to the report of Dr. Ameji and find that his credibility is at or below the zero level." J.A. 76. The ALJ's credibility determination was based on evidence which showed that on January 16, 1986, the State Board of Medical Licensure of the Commonwealth of Kentucky issued an Order of Temporary Restriction against the medical license of Dr. Ameji. The temporary restriction against Dr. Ameji's medical license was based on a complaint against Dr. Ameji which alleged: (1) that he demonstrated gross ignorance, gross incompetence, gross negligence and/or malpractice regarding patients on August 15, 1985, August 25, 1985, and August 26, 1985; and (2) that he prescribed and dispensed Schedule III and Schedule IV controlled substances to eight patients with the intent or knowledge that they were to be used for non-therapeutic purposes. J.A. 76.
 
 
 21
 Claimant asserts that the ALJ should not have relied on this evidence to discredit Dr. Ameji's opinion because all of the events upon which the temporary restriction of his license were based occurred after he examined claimant and issued his report on claimant's condition. However, as the ALJ stated in his decision and order, Dr. Ameji's "actions cast grave doubt on his medical honesty and sincerity and on the trustworthiness of his medical opinions and diagnoses." J.A. 77. We agree, and conclude that the ALJ did not err in giving little or no weight to Dr. Ameji's opinion.
 
 
 22
 Claimant also argues that the ALJ improperly discounted the report of Dr. Luciano Ladaga, who examined claimant on February 7, 1986. Based upon a history of 16 years of coal mine employment, a pulmonary function study, and an arterial blood gas study, Dr. Ladaga diagnosed coal worker's pneumoconiosis and stated that in his opinion claimant "cannot perform arduous manual labor and is not capable of performing coal mine or similar employment." J.A. 77.
 
 
 23
 The ALJ, however, accorded no weight to Dr. Ladaga's report. First, the ALJ noted that the pulmonary function study relied on by Dr. Ladaga had been reviewed and found to be invalid. Second, the ALJ noted that Dr. Ladaga made his diagnosis of pneumoconiosis without interpreting an x-ray and also provided no basis for his diagnosis. Accordingly, since Dr. Ladaga failed to explain how he reached his conclusions, and since no objective evidence supported Dr. Ladaga's finding of disability, the ALJ accorded no weight to his medical report.
 
 
 24
 "The ALJ is not bound to accept the opinion or theory of any medical expert, but may weigh the medical evidence and draw [his] own inferences." Kertesz v. Crescent Hills Coal Co., 788 F.2d 158, 163 (3rd Cir.1986) (citing Markus v. Old Ben Coal Co., 712 F.2d 322, 326 (7th Cir.1983)). "Moreover, the ALJ should reject as insufficiently reasoned any medical opinion that reaches a conclusion contrary to objective clinical evidence without explanation." Kertesz, 788 F.2d at 163 (citing Phillips v. Director, OWCP, 768 F.2d 982, 984-85 (8th Cir.1985)). Nevertheless, "an ALJ is not free to set his own expertise against that of a physician who presents competent evidence." Id. (quoting Ferguson v. Schweiker, 765 F.2d 31, 37 (3rd Cir.1985)). In this case, having reviewed Dr. Ladaga's report, we are convinced that the ALJ properly accorded less weight to the report because it was insufficiently reasoned. Once the ALJ discredited the results of the pulmonary function studies, which had been reviewed and found to be invalid, the only other objective evidence was the arterial blood gas studies which produced values far above those which would be deemed indicative of the presence of total disability.
 
 
 25
 Claimant also argues that the ALJ erred in finding that the interim presumption was not invoked under § 727.203(a)(4) by the physicians' reports of record. Specifically, claimant asserts that the ALJ erred in discounting the opinion of Dr. Wright based upon the contradiction presented by Dr. Wright's two reports concerning claimant. In his decision and order of December 23, 1986, the ALJ noted that Dr. T.L. Wright examined the claimant on November 21, 1978, diagnosed coal worker's pneumoconiosis, and concluded that claimant was totally disabled for coal mine work. The ALJ then noted that Dr. Wright examined claimant again on March 15, 1979, found a mixed bronchitis-emphysema complex which was unrelated to coal mine employment, and wrote that claimant's primary problem is other than cardiopulmonary. Decision and Order of December 23, 1986 at 12.
 
 
 26
 In weighing the physicians' reports of record, the ALJ stated that
 
 
 27
 only Dr. T.L. Wright found that the Claimant was totally disabled due to a respiratory or pulmonary impairment. Dr. Wright, however, contradicted himself only a few months later, seemingly without realizing the contradiction. His conclusion besides having extremely questionable credibility because of the contradiction, is clearly outweighed by the other medical evidence which either indicates that the Claimant does not have a totally disabling respiratory or pulmonary impairment, or simply does not address the question.
 
 
 28
 Id. at 16. We agree with the ALJ that the contradiction between Dr. Wright's two reports, particularly since they involved examinations which were performed approximately four months apart, was enough to call the credibility of Dr. Wright's conclusion into question. Accordingly, we believe that substantial evidence supports the conclusions of the ALJs with regard to the reports of Drs. Ameji, Ladaga, and Wright.
 
 B.
 
 29
 Claimant argues that the ALJ's weighing of the medical evidence of record is not supported by substantial evidence. Specifically, claimant asserts that he presented x-ray and medical opinion evidence establishing the existence of pneumoconiosis. He further asserts that the ALJ erroneously "relied on the numerical superiority of the negative x-rays," in weighing the x-ray evidence of record. Appellant's Brief at 6.
 
 
 30
 Black lung "[d]isability benefits are payable to a miner if (a) he or she is totally disabled, (b) the disability was caused, at least in part, by pneumoconiosis, and (c) the disability arose out of coal mine employment." Mullins Coal Co. v. Director, OWCP, 484 U.S. 135, 141 (1987). Under 20 C.F.R. § 727.203(a).
 
 
 31
 all three of these conditions are presumed if the claimant was engaged in coal mine employment for at least ten years and if the claimant meets one of four medical requirements: (1) a chest X-ray establishes the presence of pneumoconiosis; (2) ventilatory studies establish the presence of a respiratory or pulmonary disease--not necessarily pneumoconiosis--of a specified severity; (3) blood gas studies demonstrate the presence of an impairment in the transfer of oxygen from the lungs to the blood; or (4) other medical evidence, including the documented opinion of a physician exercising reasonable medical judgment, establishes the presence of a totally disabling respiratory impairment.
 
 
 32
 Id. at 141-42. The next paragraph in the regulation, 20 C.F.R. § 727.203(b), provides four methods for rebutting the presumption of § 727.203(a). Id. at 143.
 
 
 33
 In his decision and order of December 23, 1986, the ALJ found that the x-ray evidence of record was insufficient to invoke the interim presumption of § 727.203(a)(1) because it failed to establish the existence of pneumoconiosis. In weighing the x-ray evidence of record, the ALJ stated:
 
 
 34
 Although not entirely consistent, the bulk of the film interpretations to the end of 1978 were positive. Beginning in early 1979, however, the weight of the interpretations shifts to negative....
 
 
 35
 Considering the sequence of the films, the number of positive as opposed to negative interpretations, and the qualifications of the readers, I conclude that the x-ray evidence fails to establish the existence of pneumoconiosis pursuant to Section 727.203(a)(1). Pneumoconiosis is a progressive disease and especially significant is the fact that the majority of the most recent interpretations by the more qualified readers are negative for pneumoconiosis.
 
 
 36
 Decision and Order of December 23, 1986 at 14.
 
 
 37
 Thus, the ALJ gave greater weight to the more recent x-rays of record, even though he acknowledged that the weight of the earlier x-rays, at least until 1978, was positive for the presence of pneumoconiosis. In Woodward v. Director, OWCP, 991 F.2d 314 (6th Cir.1993), we criticized the application of the "later evidence" rule in certain situations. Specifically, we quoted from the decision of the Fourth Circuit in Adkins v. Director, OWCP, 958 F.2d 49 (4th Cir.1992), in which the Fourth Circuit also criticized the application of the later evidence rule, stating:
 
 
 38
 In a nutshell, the theory is: (1) pneumoconiosis is a progressive disease; (2) therefore, claimants cannot get better; (3) therefore, a later test or exam is a more reliable indicator of the miner's condition than an earlier one. This logic only holds where the evidence is consistent with premises (1) and (2)--i.e., the evidence, on its face, shows that the miner's condition has worsened.... On the other hand, if the evidence, taken at face value, shows that the miner has improved, the "reasoning" simply cannot apply. It is impossible to reconcile the evidence. Either the earlier or the later result must be wrong, and it is just as likely that the later evidence is faulty as the earlier. The reliability of irreconcilable items of evidence must therefore be evaluated without reference to their chronological relationship.
 
 
 39
 Woodward, 991 F.2d at 319 (quoting Adkins, 958 F.2d at 51-52). We also stated in Woodward that
 
 
 40
 in Mullins Coal Co. v. Director, OWCP, 484 U.S. 135, 108 S.Ct. 427, 98 L.Ed.2d 450 (1987), the Supreme Court also cautioned that although "early negative x-ray readings are not inconsistent with significantly later positive readings ..., [t]his proposition is not applicable where the factual pattern is reversed."
 
 
 41
 Woodward, 991 F.2d at 319-20 (quoting Mullins, 484 U.S. at 151).
 
 
 42
 Accordingly, we concluded that the ALJ in Woodward "simply misapplied the 'later evidence' principle" because "[t]he ALJ did not weigh the results of the earlier against the later X-rays." Id. at 320. We stated:
 
 
 43
 Pneumoconiosis is a progressive and degenerative disease. The subsequent negative x-ray readings do not illustrate the expected deterioration in the miner's condition, but rather an improvement in his physical condition, which is inconsistent with the normal course of the disease. Thus, a disharmony in the x-ray evidence exists, and the ALJ must specifically resolve that conflict. Accordingly, the ALJ misapplied the later evidence rule and erred as a matter of law.
 
 
 44
 Id.
 
 
 45
 We agree with claimant that the ALJ erred as a matter of law in applying the later evidence rule in evaluating the x-ray evidence. Although the ALJ acknowledged that the earlier x-rays indicated the presence of pneumoconiosis, the ALJ's discussion of the x-rays concerns the later negative x-rays which were taken after 1979. Further, the ALJ also relied on the sequence of the x-rays and the progressive nature of pneumoconiosis without resolving the disharmony and conflict between the earlier positive and later negative x-rays. Therefore, we conclude that substantial evidence does not support the ALJ's finding that the x-ray evidence does not establish the existence of pneumoconiosis under § 727.203(a)(1). Accordingly, we shall remand this case for reconsideration of the x-ray evidence in accordance with our decision in Woodward.[3]
 
 C.
 
 46
 Claimant also argues that the denial of benefits should be vacated and the claim remanded for further consideration because the ALJ failed to consider his claim for benefits under the regulations at 20 C.F.R. Part 718. We agree with claimant that the single statement in the closing paragraphs of the ALJ's decision and order of December 23, 1986, to the effect that claimant could not establish entitlement under Part 718 is inadequate to constitute consideration of his claim for benefits under Part 718. In Knuckles v. Director, OWCP, 869 F.2d 996 (6th Cir.1989), we held "that a claim for benefits filed before March 31, 1980, but adjudicated by an ALJ after that date, should be considered under the new Part 718 permanent regulations." Id. at 999. This case falls squarely within our holding in Knuckles, since the claim was filed on October 26, 1978, and was adjudicated after March 31, 1980. Although we express no opinion as to the ultimate outcome of this case, we note that if, pursuant to our analysis set forth above, the ALJ finds that the interim presumption of 20 C.F.R. § 727.203(a) has been rebutted and denies benefits under the Part 727 regulation, the ALJ must then adjudicate this claim for benefits under the Part 718 regulations.
 
 
 47
 We further note that this claim for black lung benefits, which was filed on October 26, 1978, has been pending for nearly 18 years. Claimant was 37 at the time he filed his claim for benefits, he was 45 at the time of the formal hearing, and he is now 55. In Amax Coal Co. v. Franklin, 957 F.2d 355 (7th Cir.1992), an action having a factual background similar to this action, the Seventh Circuit observed:
 
 
 48
 As so often in black lung cases the processing of the claim has been protracted scandalously. The original claim was filed in 1978 and the request for reopening in 1980--more than a decade ago. A hearing was not held until 1987, and appellate review within the Department of Labor consumed another three years. Such delay is not easy to understand. These are not big or complex cases (this one certainly is not). The monetary stakes are modest though not trivial, the medical reports and other documentary evidence (mainly depositions of physicians) are usually not voluminous, and the typical hearing lasts, we are told, no more than an hour. And there is not that extra layer of judicial review between us and the Benefits Review Board that there is in social security disability cases, where the appeal from the Appeals Council (the counterpart to the Benefits Review Board) goes to the district court first. The delay in processing these claims is especially regrettable because most black lung claimants are middle-aged or elderly and in poor health, and therefore quite likely to die before receiving benefits if their cases are spun out for years.
 
 
 49
 Id. at 356. Like the Seventh Circuit, we believe the processing of this case has been regrettably and scandalously slow. As the Fourth Circuit observed in Grigg v. Director, OWCP, 28 F.3d 416 (4th Cir.1994):
 
 
 50
 This claim is nineteen years old.... If benefits could be granted for simple perseverance, we would not hesitate to direct an award. Unfortunately for [the claimant] benefits are available only for total disability due to pneumoconiosis.
 
 
 51
 Id. at 420. Likewise, here, despite the regrettable delay in processing his claim, claimant is entitled to benefits only if he establishes the existence of a total disability due to pneumoconiosis. Nevertheless, we urge the parties, the BRB, the ALJ, and the Department of Labor to do all that they can to see that this claim for benefits is brought to a swift and final resolution.
 
 III.
 
 52
 For the reasons stated, the petition for review is GRANTED, the ALJ decision and order denying benefits dated December 23, 1986, and the ALJ decision and order on remand denying modification and benefits dated February 1, 1993, are VACATED, and the case is REMANDED to the BRB with instructions to remand the case to an ALJ for further consideration consistent with this opinion.
 
 
 53
 * * *
 
 
 
 *
 Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The ALJ also found that claimant was unable to establish entitlement under the regulations in 20 C.F.R. Part 410. Moreover, in the closing paragraphs of his opinion, the ALJ also indicated that claimant was unable to establish entitlement under Part 718 of the regulations; however, there is no other discussion of the Part 718 regulations anywhere in the ALJ's decision and order. Thus, the basis for the ALJ's conclusion that claimant could not establish entitlement under the Part 718 regulations is unclear
 
 
 [2]
 Section 725.310 states in relevant part:
 (a) Upon his or her own initiative, or upon the request of any party on grounds of a change in conditions or because of a mistake in a determination of fact, the deputy commissioner may, at any time before one year from the date of the last payment of benefits, or at any time before one year after the denial of a claim, reconsider the terms of an award or denial of benefits.
 (d) An order issued following the conclusion of modification proceedings may terminate, continue, reinstate, increase or decrease benefit payments or award benefits....
 
 
 [3]
 Furthermore, we note that because the ALJ found that the interim presumption was not invoked under § 727.203(a), the ALJ never considered whether the interim presumption had been rebutted under § 727.203(b). We express no opinion on the issue, except to note that on remand, if the ALJ determines that the interim presumption had been invoked under § 727.203(a)(1), the rebuttal provisions will then need to be addressed