**PEABODY COAL COMPANY and Old Republic Insurance Company, Petitioners,**

v.

**Ricky D. ADLER, Representative Payee o/b/o Kathy Darlene Adler (Surviving Child of Bobbie Stobaugh) and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.**

No. 00–4279.

United States Court of Appeals, Sixth Circuit.

June 16, 2002.

Before BATCHELDER and CLAY, Circuit Judges; and ALDRICH, District Judge.*

ALDRICH, District Judge

In this case, the petitioners, Peabody Coal Company ("Peabody") and Old Republic Insurance Company ("Old Republic"), appeal a decision of the Benefits Review Board of the Department of Labor ("the Board"), affirming an administrative law judge's modification of a benefits award under the Black Lung Benefits Act, 30 U.S.C. §§ 901–945 ("The Act"), in favor of one of the respondents, Ricky D. Adler,

the representative payee of Kathy Adler. The modification was initiated by the other respondent, the Office of Workers' Compensation Programs of the United States Department of Labor ("OWCP"). For the following reasons, we **AFFIRM** the Board's decision.

## I.

On July 6, 1981, a miner named Bobbie Stobaugh filed a claim for black lung benefits. He listed his wife, Gladys, and his disabled stepdaughter, Kathy Adler, as dependents. He had retired from mining the year before when he was diagnosed with lung cancer that required removal of his left lung. He died on July 28, 1985, while his claim was still pending, and Gladys pursued the claim. At the same time, she filed her own claim for survivor's benefits under the Act. The claims were consolidated, and were tried before Administrative Law Judge ("ALJ") Kendrick on October 21, 1987. On August 16, 1988, ALJ Kendrick issued a decision and order denying benefits to Bobbie Stobaugh and to Gladys Stobaugh as a survivor. ALJ Kendrick also found, in dicta, that Kathy Adler did not qualify as a dependent for purposes of augmenting an award under the applicable regulations. In particular, ALJ Kendrick found that Kathy, who had been married for five months in 1980—before Bobbie filed his claim—lost the status of dependent by virtue of her marriage.

Gladys then filed a timely appeal to the Board, which, on July 30, 1990, remanded the case because ALJ Kendrick had failed to consider whether Bobbie might have been entitled to benefits under a section of the statute providing for a rebuttable presumption of entitlement under certain cir-

---

* The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

cumstances. On remand, the case was transferred to ALJ Jansen, who issued a decision and order on June 27, 1991, awarding benefits on Bobbie's claim, augmented for one dependent, Gladys. Because benefits under the Act terminate the month before the month during which eligibility terminates, and because Bobbie died on June 28, 1985, he was entitled to benefits (augmented for Gladys) through May 30, 1985. Neither party appealed this decision. On October 31, 1991, Gladys filed a motion with ALJ Jansen seeking survivor's benefits pursuant to a regulation creating an automatic entitlement, as a matter of law, for survivors of miners who filed claims prior to January 1, 1982. On November 22, 1991, the ALJ noted that the time for appeal or reconsideration had passed, but ordered the case to be returned to the district director for a consideration of modification.

On March 16, 1992, the district director issued an order to show cause why the order should not be modified to reflect an automatic continuation of benefits for Gladys. On July 24, 1992, the district director issued a proposed order to this effect, and on September 23, 1993, a third ALJ, ALJ Morin, issued a decision and order granting the modification. ALJ Morin specifically held that Gladys's entitlement to survivor's benefits had arisen automatically as soon as ALJ Jansen found that Bobbie was entitled to benefits. On May 25, 1995, the Board affirmed ALJ Morin's decision.

On April 1, 1996, the district director issued an order to show cause why ALJ Morin's award should not be modified to provide augmented benefits, dating back to July 1981, to Kathy as a disabled adult child. The show cause order did not refer to ALJ Kendrick's 1988 order, which had found that Kathy did not qualify as a dependent of Bobbie for purposes of aug-

mented benefit payments. Instead, the show cause order simply stated, "Marriage is not an entitlement terminating event for a disabled child." J.A. at 140. Peabody requested a hearing, and on July 20, 1998, a fourth ALJ. ALJ O'Neill, issued a decision and order modifying the award to provide augmented benefits for Kathy. He found that ALJ Kendrick's 1988 finding that Kathy's marriage terminated her dependency was based on a Third Circuit case that was distinguishable and, in any event, not binding; that the issue had been decided in favor of a finding of dependency in a 1989 Sixth Circuit case; and that Bobbie and Gladys had continually raised the issue of Kathy's dependency throughout the years of ongoing proceedings. Peabody appealed, and on February 4, 2000, the Board affirmed ALJ O'Neill's decision. The Board denied a motion to reconsider its ruling on August 31, 2000, and Peabody appealed to this Court.

## II.

We must affirm the Board's decision if it is rational, is supported by substantial evidence, and is in accordance with law. *Wright v. Island Creek Coal Co.*, 824 F.2d 505, 507 (6th Cir.1987). However, we review questions of law *de novo*. *Peabody Coal Co. v. Greer*, 62 F.3d 801 (6th Cir. 1995).

Peabody raises two issues on appeal: (1) that modification of the award to reflect Kathy's status as an augmentee was barred by the one-year limitation in 33 U.S.C. § 922; and (2) that even if timely, the modification was based on a change in law, not a mistake in fact or change in condition, and that such a basis for modification is not allowed by the statute.

### A. One–Year Time Limit

 33 U.S.C. § 922 [also known as Section 22 of the Black Lung Benefits Act] states, in relevant part:

Upon his own initiative, or upon the application of any party in interest . . . on the ground of a change in conditions or because of a mistake in a determination of fact by the deputy commissioner, the deputy commissioner may, at any time prior to one year after the date of the last payment of compensation, whether or not a compensation order has been issued, or at any time prior to one year after the rejection of a claim, review a compensation case . . . in accordance with the procedure prescribed in respect of claims in section 919 of this title, and in accordance with this section issue a new compensation order which may terminate, continue, reinstate, increase, or decrease such compensation, or award compensation.

33 U.S.C. § 922. The DOL regulations implement the statute in similar words:

Upon his or her own initiative, or upon the request of any party on grounds of a change in conditions or because of a mistake in a determination of fact, the deputy commissioner may, at any time before one year from the date of the last payment of benefits, or at any time before one year after the denial of a claim, reconsider the terms of an award or denial of benefits.

20 C.F.R. § 725.310(a).

Peabody argues that ALJ O'Neill's decision constituted an improper modification of ALJ Kendrick's eight-year-old finding that Kathy's marriage was an entitlement-terminating event. Peabody relies primarily on *Metropolitan Stevedore Co. v. Rambo*, 515 U.S. 291, 298–300, 115 S.Ct. 2144, 132 L.Ed.2d 226 (1995), which suggests that the one-year limitation period must be strictly construed. The limitation period, however, is only triggered by "the denial of a claim" or by "the last payment of benefits." 20 C.F.R. § 725.310(a). The case before ALJ Kendrick in 1988 involved two consolidated claims, that of Bobbie,

who had recently died, and that of Gladys as a survivor, both of which were rejected. Gladys, however, filed a timely appeal on both claims, and on July 30, 1990, the Board remanded Bobbie's claim and affirmed the denial of Gladys's claim, correctly noting that denial of her entitlement could change if, on remand, Bobbie was awarded benefits. On June 27, 1991, ALJ Jansen, on remand, held that Bobbie was entitled to benefits, augmented for one dependent, Gladys.

As the Board correctly noted in its May 25, 1995 opinion, Gladys's entitlement arose by operation of law upon issuance of this award to Bobbie. 20 C.F.R. § 725.213. Because Gladys filed a timely appeal of the 1988 decision, and because her entitlement arose as a matter of law after the award to Bobbie on remand, no final "denial of a claim" by Gladys was ever issued that would trigger the limitations period. Instead, the one-year period was triggered by "the last payment of benefits" to Gladys. A surviving spouse's benefits are paid until the month before the month in which the surviving spouse either remarries or dies. *Id.* Because Gladys died on May 24, 1996, she was entitled to receive benefits through April, 1996. The district director issued its order to show cause why the award should not be amended to reflect Kathy's dependency on April 1, 1996—well before the one-year limitations period expired and, in fact, even before the event that would trigger that period, that is, Gladys's death, took place. Modification was therefore not barred by the one-year limitation period.

**B. Mistake in a Determination of Fact**

■ While the one-year time limit for seeking modification is strictly applied, the allowable grounds for modification have consistently been broadly construed by courts. *See Rambo*, 515 U.S. at 298–99 (citing *Banks v. Chicago Grain Trimmers Ass'n*, 390 U.S. 459, 465, 88 S.Ct. 1140, 20

L.Ed.2d 30 (1968)). In this case, modification was based on the "mistake in a determination of fact" clause of § 922. Peabody argues that the only potential mistake in the previous orders, which awarded no benefits to Kathy, was the determination by ALJ Kendrick that marriage is an entitlement-terminating event. The district director, in the April 1, 1996 show cause order, reached exactly the opposite conclusion. Peabody therefore argues that the modification to reflect Kathy's dependency was based on a ruling that ALJ Kendrick had made an error of law in determining that marriage is an entitlement-terminating event. In other words, Peabody does not now contest the substantive conclusion that marriage is not an entitlement-terminating event;[1] instead, Peabody argues that modification is not the proper procedure for correcting this error, which Peabody describes as a pure mistake of law.

20 C.F.R. § 725.209 provides that a child is a dependent for purposes of augmenting the benefits of a miner or surviving spouse if the child (1) is unmarried; and (2) is either under 18 years old, or is disabled, or is a full-time student. 20 C.F.R. § 725.209(a). In 1988, ALJ Kendrick interpreted the first of these requirements to exclude any child who had ever been married, even if the child was again unmarried at the time the miner or surviving spouse sought benefits. J.A. at 60. He relied on the Board's opinion in *Kidda v. OWCP*, 7 BLR 1–202 (1984), *aff'd*, 769 F.2d 165 (3d Cir.1985), in which the Board held, and the Third Circuit affirmed, that a disability has to be continuous to create an entitlement to augmented benefits. ALJ Kendrick applied this same reasoning to the first dependency requirement—that a child must be unmarried—and determined

in dicta that because Kathy had not been continuously unmarried, she could not be considered a dependent. The district director's show cause order, on the other hand, stated that "[m]arriage is not an entitlement terminating event for a disabled child," and this interpretation was adopted by ALJ O'Neill and the Board.

In most contexts, this may look like a change in law, so that the modification in question would have been impermissibly based on a mistake of law rather than on a mistake of fact. As the respondents point out, however, black lung cases are simply an anomaly. As we have previously noted, "the distinction between 'law' and 'facts' is not as clear as [the employer] suggests, at least in black lung benefits cases." *Youghiogheny & Ohio Coal Co. v. Milliken*, 200 F.3d 942, 954 (6th Cir.1999). In *Milliken*, this Court held that a surviving spouse could appropriately use the modification procedure to correct the decision of an ALJ who, in denying her claim, had failed to apply the so-called "widow's presumption," which provides that eligible survivors are presumptively entitled to benefits if their spouse was a miner who died before a certain date and who had been employed as a coal miner for 25 years or more. *Milliken*, 200 F.3d at 948, 953–54 (citing 30 U.S.C. § 921(c)(5); 20 C.F.R. § 727.204). In explaining the blurred distinction between questions of fact and questions of law in black lung benefits cases, this Court observed:

> [A]t least one court of appeals has referred to a black lung claimant's entitlement to benefits as "the ultimate fact." *Keating v. Director, OWCP*, 71 F.3d 1118, 1122–23 (3d Cir.1995). *See also Betty B Coal Co. [v. OWCP*, 194 F.3d 491, 497 (4th Cir.1999)] ("[A]ny mistake

---

1. Nor does Peabody contest ALJ O'Neill's finding that Kathy is disabled and has been since before she was 18 years old, as required under the regulations. 20 C.F.R. §§ 725.221,

725.209(a)(2)(ii). The Board affirmed the ALJ's factual findings regarding Kathy's eligibility under these requirements.

of fact may be corrected, including the ultimate issue of benefits eligibility"). *Compare Amax Coal Co. v. Franklin*, 957 F.2d 355, 357–58 (7th Cir.1992) (noting that the question of whether a miner had black lung disease is not one of "fact[ ] in the lay sense," but observing that the question is nevertheless treated as one of fact for the purposes of deciding whether a "mistake in a determination of fact" has been made).

*Id.* at 954.

Adler and the OWCP characterize the issue of Kathy's dependency as the "ultimate fact" in this case. Since, under *Milliken*, "[i]f a claimant merely alleges that the ultimate fact ... was wrongly decided, the [district director] may, if he chooses, accept this contention and modify the final order accordingly," *id.*, the respondents argue that the modification at issue here was appropriate. The respondents also cite to *Amax Coal Co. v. Franklin*, 957 F.2d 355 (7th Cir.1992), in which the Seventh Circuit noted that:

> a finding of black lung disease is generated by a complex system of presumptions; it is not a straightforward medical judgment. It might better be classified as a "mixed question of fact and law" or an "ultimate fact" rather than as a plain-vanilla fact. But for many legal purposes (appellate review, for example) such facts, though they are not fact in the lay sense but are instead the outcome of applying legal standards to facts, are treated like fact, ... and one of these purposes we think should be that of deciding whether a black lung case can be reopened.

*Id.* at 357–58 (citations omitted). By analogy, OWCP suggests that, just as a finding of black lung disease is based on a complex set of presumptions, a finding of dependency is also based on a number of subsidiary questions, such as what Kathy's relationship is to Bobbie and Gladys, whether Kathy is disabled under the applicable regulations, and whether Kathy is unmarried.

The analogy is persuasive. This circuit and a number of others have viewed the power to modify an award because of a mistake in a determination of fact quite broadly. Under this precedent, a wide array of issues related to the ultimate determination whether to award benefits can be modified under section 22, as can so-called "ultimate facts." In this case, the subsidiary issue of whether Kathy was "unmarried" as required by the regulation fits comfortably within the unusually loose confines of this precedent.

### III.

For the foregoing reasons, we **AFFIRM** the Board's decision.