THE YOUGHIOGHENY AND OHIO COAL COMPANY, Petitioner,

v.

Evelyn MILLIKEN, *Widow of Harold Milliken,* and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.

No. 98–4395.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 29, 1999.

Decided Dec. 29, 1999.

Rehearing and Suggestion for Rehearing En Banc Denied March 2, 2000.*

---

* Judge Wellford would grant rehearing for the reasons stated in his dissent.

John G. Paleudis (argued and briefed), Hanlon, Duff, Paleudis & Estadt Co., St. Clairsville, OH, for Petitioner.

Paul A. Pachuta (argued and briefed), Reynoldsburg, OH, Jennifer U. Toth (argued and briefed), U.S. Department of Labor, Office of the Solicitor, Washington, D.C., for Respondents.

Before: WELLFORD, MOORE, and GILMAN, Circuit Judges.

GILMAN, J., delivered the opinion of the court, in which MOORE, J., joined. WELLFORD, J. (pp. 957–62), delivered a separate dissenting opinion.

## OPINION

GILMAN, Circuit Judge.

This is a black lung benefits case that began nearly twenty-five years ago with the death of a coal-mining employee named Harold Milliken. Since then, the case has involved three formal hearings before an administrative law judge (ALJ), three appeals to the Benefits Review Board, and two petitions to this court for

judicial review. On its third trip through the adminstrative process, the ALJ concluded that Evelyn Milliken was entitled to survivor's benefits, and the Benefits Review Board affirmed. Harold Milliken's former employer, the Youghiogheny and Ohio Coal Company (Y&O), has petitioned this court for judicial review. For the reasons set forth below, we conclude that the Board's affirmance was not legally erroneous and that the ALJ's decision was supported by substantial evidence. We therefore DENY Y&O's petition for review.

## I. BACKGROUND

Harold Milliken worked in the coal mines for approximately forty years. He ceased working in the mines in 1973 due to health problems, and he died two years later. Evelyn Milliken, Harold Milliken's widow, filed a claim in August of 1975 for surviving spouse benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901–945.

■ The ALJ to whom the claim was assigned concluded in 1986 that Milliken's autopsy evidence was sufficient to trigger the so-called "Part C" interim presumption of 20 C.F.R. § 727.203(a)(1). Under that interim presumption, a miner engaged in coal mine employment for at least ten years is entitled to a rebuttable presumption that he was totally disabled from, and died due to, pneumoconiosis arising from his coal mine employment if a chest X-ray, biopsy, or autopsy establishes the existence of pneumoconiosis. *See id.* Coal workers' pneumoconiosis is a pulmonary disease that in its "complicated" form "involves progressive massive fibrosis as a complex reaction to dust and other factors (which may include tuberculosis or other infection), and usually produces significant pulmonary impairment and marked respiratory disability." *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 7, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976) (footnote omitted). "This disability limits the victim's physical capabilities, may induce death by cardiac failure, and may contribute to other causes of death." *Id.* (footnote omitted). For the purposes of federal black

lung benefits law, however, "pneumoconiosis" is a term of art that means any "chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment," and encompasses a number of coal dust-related pulmonary diseases in addition to coal workers' pneumoconiosis. *See* 20 C.F.R. § 727.202.

Harold Milliken's autopsy results disclosed, among other ailments, anthracosis (which is included in the § 727.202 definition of pneumoconiosis) and fibrosis. Evelyn Milliken, the ALJ concluded, was thus entitled to the interim presumption under 20 C.F.R. § 727.203(a)(1). This interim presumption, however, can be rebutted by evidence that the miner's death "did not arise in whole or in part out of coal mine employment." 20 C.F.R. § 727.203(b)(3). The ALJ, in a decision and order dated January 16, 1986, concluded that the interim presumption in this case was so rebutted. This determination was based on the opinion of physicians who had reviewed pertinent medical records and concluded that Harold Milliken was not disabled due to coal dust exposure when he died, and that his death was not in any way affected by coal dust exposure because his level of pneumoconiosis at the time he died could not have caused any disability or impairment. The primary cause of death listed on Harold Milliken's death certificate, in fact, was heart disease, although pneumoconiosis was listed as a contributing factor.

Evelyn Milliken then filed a pro se appeal. A divided Benefits Review Board reversed, awarding her benefits. The Board considered itself bound by this court's decision in *Kyle v. Director, OWCP*, 819 F.2d 139 (6th Cir.1987), to adjudicate her claim under the regulations ordinarily applicable to "Part B" claims, which are set forth at 20 C.F.R. Part 410. Generally, "Part B" claims are those that were filed before July 1, 1973 and processed by the Social Security Administration pursuant to regulations promulgated by the Secretary of Health and Human

Services (formerly Health, Education and Welfare). The benefits for "Part B" claims are funded by the government. "Part C" claims, in contrast, are those filed on or after July 1, 1973, and processed by the Office of Workers' Compensation Programs pursuant to regulations promulgated by the Secretary of Labor. The benefits for "Part C" claims are employer-funded..

The regulations pertinent to "Part B" claims provide for an "interim presumption" that a miner who died before January 1, 1974 was, at the time of his death, totally disabled from, and died due to, pneumoconiosis if a chest X-ray, biopsy, or autopsy establishes the existence of pneumoconiosis. *See* 20 C.F.R. § 410.490(b)(1). This "Part B" interim presumption is similar to the "Part C" interim presumption established by Labor Department regulation at 20 C.F.R. § 727.203, although the "Part B" interim presumption does not have a rebuttal provision similar to the one that applies to the interim presumption in "Part C" claims. *Compare* 20 C.F.R. § 727.203(b) *with* 20 C.F.R. § 410.490(c). Instead, the regulations provide that the "Part B" interim presumption can be rebutted only upon a showing that the miner is "doing his usual coal mine work or comparable and gainful work," 20 C.F.R. § 410.490(c)(1), or that the miner is able to do such work, *see* 20 C.F.R. § 410.490(c)(2). Another significant difference between the "Part B" and "Part C" interim presumptions is that the "Part C" regulations require at least ten years of coal mining employment before the interim presumption can be invoked. *See* 20 C.F.R. § 727.203(a)(1). The "Part B" regulations, however, do not impose the ten-year requirement for the presumption to be invoked if a chest X-ray, biopsy, or autopsy establishes the existence of pneumoconiosis. *See* 20 C.F.R. § 410.490(b)(1)(i).

Because Harold Milliken died after January 1, 1974, one might ordinarily presume that the regulations pertinent to "Part B" claims have nothing to do with this case. But the statute authorizing the Secretary of Labor to promulgate regulations for "Part C" claims, 30 U.S.C. § 902(f), requires that the criteria for entitlement to black lung benefits adopted by the Secretary be "not ... more restrictive than the criteria applicable to a claim filed on June 30, 1973," when the "Part B" regulations adopted by the Secretary of Health, Education and Welfare were in effect.

In *Kyle*, this court held that a coal miner who had worked in the coal mines for less than ten years, but who had a positive x-ray reading for pneumoconiosis that would have entitled him to the interim presumption under the "Part B" regulations but not the "Part C" regulations, should have had his claim considered under the "Part B" regulations. *See Kyle*, 819 F.2d at 144. This was because the Labor Department regulations' criteria, which included a requirement of ten years of coal mine work before the "Part C" interim presumption could be applied, were "more restrictive" than the Health, Education and Welfare Department regulations' criteria that imposed no such requirement for the interim presumption applicable to "Part B" claims. The Labor Department regulations thus exceeded the Secretary of Labor's rulemaking authority under 30 U.S.C. § 902(f). *See id.*

Following the Board's reversal of the ALJ and its award of benefits to Evelyn Milliken, Y&O petitioned this court for review. The petition was granted, the Board was reversed, and the ALJ's order denying benefits was reinstated in an opinion filed on January 23, 1989. *See Youghiogheny and Ohio Coal Co. v. Milliken*, 866 F.2d 195, 203 (6th Cir.1989). In so ruling, this court held that its prior decision in *Kyle* was limited to holding that the criteria for initially invoking the "Part C" interim presumption had to be "not ... more restrictive" than the criteria for invoking the "Part B" interim presumption, but that *Kyle* did not apply to the methods of rebutting the interim presumption. *See id.* at 202. (The Supreme Court, in *Pauley v. BethEnergy Mines, Inc.*, 501 U.S.

680, 111 S.Ct. 2524, 115 L.Ed.2d 604 (1991), subsequently held, in apparent agreement with this court's 1989 opinion in this case, that the Labor Department regulations were not inconsistent with 30 U.S.C. § 902(f)(2) to the extent that they allowed the interim presumption to be rebutted with evidence demonstrating that the miner does not or did not have pneumoconiosis or that the miner's disability does not or did not arise out of coal mine employment. *See id.* at 706, 111 S.Ct. 2524.)

On February 14, 1989, Evelyn Milliken filed a petition for rehearing, a motion for enlargement of time to file her petition for rehearing (because the time for filing a petition for rehearing had already elapsed), and a motion for a stay of this court's mandate, arguing that she was entitled to an award of benefits under an altogether different presumption, the so-called "widow's presumption." This was an argument that she had raised before the ALJ, although the ALJ never addressed it. But she had not made this argument before either the Board or this court prior to filing her post-judgment motions. For this reason, neither the Board nor this court considered the applicability of the widow's presumption.

Under the widow's presumption, eligible survivors are presumptively entitled to benefits if their spouses were miners who died on or before March 1, 1978, having been employed for 25 years or more in one or more coal mines before June 30, 1971. *See* 30 U.S.C. § 921(c)(5); 20 C.F.R. § 727.204 (implementing regulation). (Unlike the regulations that accompany the interim presumptions, which clarify how those presumptions are raised and rebutted, the regulation that implements the widow's presumption simply reiterates the text of § 921(c)(5), except for the statutory section's "sunset" provision.)

The widow's presumption, as construed by this court, can be rebutted in a particular case by a showing that the miner in question was not "partially or totally disabled due to pneumoconiosis" at the time of his death. *See Begley v. Consolidation Coal Co.*, 826 F.2d 1512, 1517 (6th Cir.1987) (setting forth the test for rebutting the widow's presumption). This court denied Evelyn Milliken's motions for an extension of time within which to petition for rehearing and for a stay of the court's mandate in a one-sentence order dated March 15, 1989. The mandate issued on March 23, 1989. She did not seek review by the Supreme Court.

The Department of Labor subsequently requested reimbursement for benefits already paid to Evelyn Milliken. On February 5, 1990, her attorney sent a letter to the Department of Labor on her behalf, stating that she had been "advised" (presumably by her attorney) "to consider requesting a modification under 20 C.F.R. [§ ] 725.310 on grounds of mistake in both the original adjudication and the appeals thereof." The letter explained that "[t]hese grounds will be more fully set forth in a modification request I am preparing to file shortly" with the district director of the Office of Workers' Compensation Programs, the appropriate Department of Labor official.

Although the district director deemed this letter a valid modification request, he rejected the request as untimely because more than one year had elapsed between this court's judgment reinstating the ALJ's 1986 order and the date her February 5, 1990 letter was received. Evelyn Milliken objected in a letter dated March 9, 1990, in which she argued that her one-year period to seek modification began to run no sooner than March 15, 1989, the date this court denied her motions for enlargement of time and for a stay of its mandate. The district director then changed course, recommending that the request for modification be deemed timely, but that it be denied on the merits.

A hearing was eventually held before another ALJ (not the one who denied benefits in 1986), who, in a decision and order dated April 15, 1993, concluded that the request for modification was timely and

that this court's 1989 order reinstating the ALJ's original decision to deny benefits did not preclude modification. The second ALJ, however, agreed with the district director that the request for modification should be denied on the merits, concluding that a petition for modification pursuant to 20 C.F.R. § 725.310 simply did not provide a remedy for the problem Evelyn Milliken was complaining about—an allegedly erroneous decision not to apply the widow's presumption.

Evelyn Milliken appealed the ALJ's decision to the Board. Y&O cross-appealed, arguing that the request for modification should have been denied as untimely, and also should have been denied because the ALJ lacked the power to modify a decision that a higher authority (this court) had ordered reinstated. The Board affirmed in part, vacated in part, and remanded the case to the ALJ, concluding that (1) the petition for modification was timely filed, (2) modification was not precluded, even though this court had directed the reinstatement of the ALJ's prior order, and (3) Evelyn Milliken's request was an appropriate subject for modification proceedings and should have been considered on the merits by the ALJ.

On remand, the ALJ, in a decision and order issued on July 16, 1997, awarded benefits. The ALJ held that Evelyn Milliken was entitled to the widow's presumption because Harold Milliken had worked in the coal mines for more than twenty-five years before June 30, 1971, and because he died before March 1, 1978. Y&O, the ALJ concluded, had failed to rebut the presumption by showing that Harold Milliken was not "partially or totally disabled due to pneumoconiosis" when he died. *See* 30 U.S.C. § 921(c)(5). Following this decision, Y&O appealed to the Board, which affirmed the award of benefits in an opinion and order dated September 30, 1998. Y&O's petition for review by this court followed.

In its petition, Y&O argues that (a) this court's order denying rehearing of its January 23, 1989 judgment stripped both the ALJ and the Board of jurisdiction to consider as grounds for modifying the ALJ's order the widow's presumption argument that Evelyn Milliken sought unsuccessfully to advance in her petition for rehearing, (b) the document deemed by the ALJ and the Board to constitute a timely modification request was not timely filed, (c) the document was, in any event, not a proper request for modification, (d) that Evelyn Milliken forfeited any right she had to the application of the widow's presumption by not specifically objecting to the ALJ's failure to consider it when she initially appealed to the Board and when she did not raise the issue in her briefs before this court during Y&O's prior petition, (e) the ALJ "just re-weighed the evidence anew" and thus exceeded his authority under the regulation that permits modification of prior ALJ orders, and (f) modification was also inappropriate because the ALJ in 1986 made proper findings of fact that would have foreclosed Evelyn Milliken from any entitlement to benefits, including the widow's presumption, thus rendering his failure to consider the applicability of the widow's presumption harmless error.

## II. ANALYSIS

### A. Effect of this court's denial of rehearing

■ Evelyn Milliken argued during her first hearing before the ALJ in 1986 that she was entitled to the widow's presumption, although the ALJ's decision and order did not discuss this argument. On appeal to the Board, and in defending the Board's decision before this court, she did not argue that the ALJ erroneously failed to consider her entitlement to that presumption. She did, however, make the argument in her untimely and unsuccessful petition for rehearing before this court. Y&O now argues that because she raised this argument before this court (albeit only in an unsuccessful attempt to gain rehearing), that neither the ALJ nor the Board had the authority to reconsider the argument. Essentially, Y&O argues that al-

lowing the ALJ or the Board to consider an argument that this court rejected—regardless of why this court rejected it—would allow a "lower adjudicatory tribunal" to undo the judgment of a "higher adjudicating tribunal." Y&O argues that Evelyn Milliken's request for modification, after being submitted to the Department of Labor's district director, should then have been directed to this court to see "if modification of its denial of the Petition for Rehearing was still appropriate."

For the unremarkable proposition that inferior tribunals cannot refuse to obey the decisions of superior tribunals, Y&O relies on *Director, OWCP v. Kaiser Steel Corp.*, 860 F.2d 377 (10th Cir.1988); *Director, OWCP v. Peabody Coal Co.*, 837 F.2d 295 (7th Cir.1988); *Director, OWCP v. Drummond Coal Co.*, 831 F.2d 240 (11th Cir. 1987). In each of those cases, however, a district director of the Office of Workers' Compensation Programs attempted to "modify" the award of an ALJ, who outranks the district director in the administrative hierarchy. The authorizing statute permits district directors to modify awards based on a "mistake in a determination of fact" only when the mistake was made by the district director himself. *See, e.g.*, 33 U.S.C. § 922. If the alleged mistake was made by the ALJ, the district director lacks the authority to correct it, even though the statute and regulations require that the request for modification be addressed to the district director and then forwarded to the Office of Administrative Law Judges for adjudication. *See, e.g.*, *Cunningham v. Island Creek Coal Co.*, 144 F.3d 388, 390 (6th Cir.1998).

■ Administrative agencies and ALJs, of course, are not free to ignore this court's mandates. This "mandate rule" is sometimes described as part of the inaptly-named "law of the case doctrine." *See, e.g.*, 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4478, at 788–93 (1st ed. 1981 & Supp.1999). *See also Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir.1998) (noting that the doctrine applies to judicial review of administrative decisions and that the doctrine requires the administrative agency "to conform its further proceedings in the case to the principles set forth in the judicial decision, unless there is a compelling reason to depart").

■ An appellate court's mandate, however, forecloses a lower court or an agency only from revisiting issues that the appellate court actually decided. *See, e.g.*, *Biggins v. Hazen Paper Co.*, 111 F.3d 205, 209 & n. 3 (1st Cir.1997) ("Broadly speaking, mandates require respect for what the higher court decided, not for what it did not decide."). *See also, e.g.*, *Nguyen v. United States*, 792 F.2d 1500, 1502 (9th Cir.1986) ("[A]lthough the mandate of an appellate court forecloses the lower court from reconsidering matters determined in the appellate court, it leaves to the [lower] court any issue not expressly or impliedly disposed of on appeal.") (internal quotation marks and citation omitted).

■ Moreover, Y&O's argument presumes that the courts of appeals exercise the same degree of supervision and control over administrative agencies as they maintain over the district courts within their jurisdiction, which they do not. *See, e.g.*, *FCC v. Pottsville Broadcasting Co.*, 309 U.S. 134, 145, 60 S.Ct. 437, 84 L.Ed. 656 (1940) ("[A]n administrative determination in which is imbedded a legal question open to judicial review does not impliedly foreclose the administrative agency, after its error has been corrected, from enforcing the legislative policy committed to its charge."); *Communication Workers of America, Local 5008 v. NLRB*, 784 F.2d 847, 849 (7th Cir.1986) ("Judicial review of [an agency's] orders permits correction of legal mistakes, [but] once any mistake has been exposed further proceedings are in the [agency's] charge," and also describing as "unthinkable" the idea that the law-of-the-case doctrine would bar on remand an administrative agency's use of an agency policy, the legal basis of which was not raised before, or addressed by, the court of appeals).

Because it was not timely filed, this court never disposed of Evelyn Milliken's petition for rehearing on the merits, either expressly or impliedly. In 1989, the time to file a petition for rehearing in any type of case was fourteen days from the entry of judgment, unless altered by court order or local rule. *See* Fed. R.App. P. 40 (1989). This court's judgment was entered on January 23, 1989. Milliken's petition for rehearing and motion for an extension of time within which to file her petition were filed on February 14, 1989, more than fourteen days later, and were thus untimely. The order entered by this court on March 15, 1989 in fact denied Evelyn Milliken's motion for an extension of time in which to file a petition for rehearing and denied her motion for a stay of this court's mandate, but did not address the merits of her petition. It thus appears that this court did not deny her petition for rehearing, but rather denied her permission to file the petition. In sum, this court's prior opinion did not foreclose the subsequent ALJ from modifying the 1986 ALJ's order in accordance with a statutory provision that neither the ALJ in 1986 nor this court in 1989 considered. The ALJ thus had jurisdiction to entertain the request for modification on the merits.

**B. Timeliness of the request**

Y&O argues that Evelyn Milliken's request for modification of the ALJ's order was untimely in any event, because it was not filed within one year from January 23, 1989, the date this court issued its prior opinion and order in this case. The document that the ALJ considered to be the request for modification was submitted to the district director on February 5, 1990. This court, however, denied Evelyn Milliken's motion to file her untimely petition for rehearing and motion to stay the mandate on March 15, 1989, and its mandate actually issued on March 23, 1989. Both of those dates are less than one year before February 5, 1990.

Under the governing statute, requests for modification may be filed "at any time prior to one year after the rejection of a claim...." 33 U.S.C. § 922. *See also* 20 C.F.R. § 725.310(a) (requiring that a claimant's request for modification be filed "at any time before one year after the denial of a claim...."). Consistent with the authorizing statute and regulations, the Director of the Office of Workers' Compensation Programs considers claims rejected or denied when they become "final." *See* 33 U.S.C. § 921(a). The statute and regulations define when an order of the ALJ or the Board becomes "final." Neither the statute nor the regulations, however, elucidates when a court of appeals's decision to reinstate an ALJ's order denying benefits becomes "final" for the purpose of starting the one-year period to file a request for modification.

■ As the Ninth Circuit has recently observed, the terms " 'final,' 'judgment,' and 'not appealable,' all have clearer meanings when applied to district courts than to courts of appeals." *Bianchi v. Perry*, 154 F.3d 1023, 1024 (9th Cir.1998). Unlike district courts, the courts of appeals direct the district courts and administrative agencies over which they have appellate or reviewing jurisdiction through mandates, not through orders and judgments. *See, e.g.*, *Shakespeare Co. v. Silstar Corp. of America, Inc.*, 906 F.Supp. 997, 1002 (D.S.C.1995) (noting that the mandate is the "official mode of communicating the judgment of an appellate court to a lower court, thereby directing action to be taken or disposition to be made of the cause by the trial court") (citation and brackets omitted), *aff'd*, 110 F.3d 234 (4th Cir.1997), *cert. denied*, 522 U.S. 1046, 118 S.Ct. 688, 139 L.Ed.2d 634 (1998). This is true even though in most cases the mandate simply consists of a certified copy of the judgment of the court of appeals, a copy of the court's opinion, and any directions regarding the taxation of costs. *See* Fed. R.App. P. 41.

■ Although the issuance of the mandate is largely a formality, the court of appeals retains jurisdiction over the case until it issues, and the district court or

agency whose order is being reviewed cannot proceed in the interim. *See, e.g.*, 16A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3987, at 735–36 (3d ed.1999); *First Gibraltar Bank, FSB v. Morales*, 42 F.3d 895, 897–98 (5th Cir.1995) (collecting cases). In fact, even when a case is destined for remand, the case file physically remains in the office of the clerk of the court of appeals until the mandate issues.

Under the current version of Rule 41(a) of the Federal Rules of Appellate Procedure, the mandate must issue seven days after the time for filing a petition for rehearing expires, unless the court has directed otherwise. In 1989, Rule 41(a) provided that the mandate was to issue twenty-one days after the entry of judgment, unless the court ordered otherwise. *See* Fed. R.App. P. 41(a) (1989). Under both versions of the rule, a timely petition for rehearing would automatically stay the mandate unless the court ordered otherwise.

To hold that the one-year time limit to request modification from the district director begins to run even before the mandate issues would be inconsistent with the time frame set forth in 33 U.S.C. § 922. That section provides that review by the district director (and subsequent action by other appropriate officials) may be had "at any time prior to one year after the rejection of a claim." The words "at any time" suggest that Congress intended to give aggrieved parties (or district directors, who may initiate the modification process on their own), a full year in which modification can be sought. It would make little sense to conclude that a significant part of that year expires during the pre-mandate period, during which the district director lacks jurisdiction to act on the request and does not even have physical custody of the case file. In fact, because Rule 40(a) now grants all parties to a civil case in which the United States or a federal agency or officer is a party forty-five days from the entry of judgment to petition for rehearing, and because a federal agency or officer will invariably be a party to any black

lung benefits case, *see* 30 U.S.C. § 932(k), nearly two months will typically elapse between the entry of judgment and the issuance of the mandate in black lung benefits cases. During the first forty-five days of that time, of course, a party may file a petition for rehearing and the court of appeals may agree to rehear the case.

█ In this case, the mandate issued on March 23, 1989, less than a year before the date on which the district director determined that Evelyn Milliken requested modification. The reason that the mandate issued more than twenty-one days after the entry of judgment was because the court was considering Milliken's motion to extend the time within which to file her petition to rehear, which was ultimately rejected. Indeed, the court requested that Y&O respond to the petition for rehearing. (Rule 40 did not then, and does not now, permit responses to petitions for rehearing unless requested by the court.) But even if the mandate had issued on February 13, 1989, twenty-one days after this court's judgment was entered, the request for modification, deemed submitted on February 5, 1990, would have been timely.

Y&O argues that unless the one-year period within which to request modification from the district director begins on the date the court of appeals enters judgment, claimants would be able to extend their time to request modification indefinitely by repeatedly filing motions for rehearing in order to delay the court of appeals from issuing its mandate. We find this argument unpersuasive. First, it seems highly unlikely that a claimant's attorney would file serial petitions for rehearing by this court (which would almost surely be summarily denied if the first such petition was denied) in order to preserve the means to file a modification request with the district director, rather than simply file the modification request itself. Second, it is exceedingly difficult to imagine that any court of appeals would allow its procedures to be abused in that

way. Consistent with Rules 40 and 41, a court of appeals could put an end to such serial petitions by summarily denying a second petition for rehearing and simultaneously ordering that the mandate issue forthwith.

A more plausible argument, also raised by Y&O, is that by statute and Supreme Court rule, the time to file a petition for certiorari runs from the date that the court of appeals enters its judgment, not from the date of its mandate. *See* 28 U.S.C. § 2101(c); Sup. Ct. R. 13(1). Unlike a district court or an administrative agency, however, the Supreme Court of the United States does not need to wait for a court of appeals to issue its mandate before it can act in a case. The Supreme Court, in fact, can agree to hear a case even before the court of appeals enters judgment. *See* 28 U.S.C. § 2101(e). We therefore do not find the commencement date for the filing of a petition for certiorari persuasive in determining when a court of appeals's decision becomes "final" for the purpose of starting the one-year period to file a request for modification.

■ After taking all factors into consideration, we hold that the time to file a request for modification with the district director begins when the mandate of the court of appeals issues, at which time the Office of Workers' Compensation Programs regains jurisdiction to entertain such a request.

### C. Sufficiency of the request for modification

■ Next, Y&O argues that the February 5, 1990 letter from Evelyn Milliken's attorney to the district director, which stated that Evelyn Milliken "was advised to consider requesting a modification under 20 C.F.R. [§ ] 725.310 on grounds of mistake in both the original adjudication and the appeals thereof," and that the grounds for the request "will be more fully set forth in a modification request I am preparing to file shortly," was not a proper request for modification. Y&O contends with some force that one would ordinarily expect that a document deemed a request for modification would in fact request the modification, and not simply manifest an intent to file such a request in the future.

■ In black lung cases, however, the standard for what constitutes a modification request is very low. *See, e.g., Betty B Coal Co. v. Director, OWCP*, 194 F.3d 491, 497 (4th Cir. 1999) ("Almost any sort of correspondence from the claimant can constitute a request for modification of a denial, as long as it is timely and expresses dissatisfaction with a purportedly erroneous denial"). *Compare also Fireman's Fund Ins. Co. v. Bergeron*, 493 F.2d 545, 547 (5th Cir.1974) (holding that a district director's written summary of a telephone message from a claimant's attorney that "the claimant is permanently totally disabled and will file for review under [33 U.S.C. § 922]" constituted an application for modification under 33 U.S.C. § 922) (internal quotation marks omitted) *with I.T.O. Corp. of Virginia v. Pettus*, 73 F.3d 523, 527 (4th Cir.1996) (noting that the critical factor is the district director's ability to discern that modification of a particular order is desired, while rejecting the argument that an unexplained statement that "we herewith make claim for any and all benefits my client may be entitled to" suffices to alert the district director that modification of a prior order is being sought).

Y&O also argues that a letter from Evelyn Milliken's attorney to the district director dated March 28, 1990 makes clear that the February 5, 1990 letter was not a request for modification. This argument is premised on the assumption that modification under 20 C.F.R. § 725.310 is not appropriate for "complain[ts] about legal issues." Y&O therefore reasons that because the grounds for modification under 20 C.F.R. § 725.310 are "a change in conditions" or "a mistake in a determination of fact," the March 28, 1990 letter expressly disclaims her entitlement to the only legitimate bases for modification because it states that the reconsideration request

"neither re-argues previously litigated facts" nor "proffer[s] any newly discovered evidence."

We do not believe, however, that the distinction between "law" and "facts" is as clear as Y&O suggests, at least not in black lung benefits cases or cases arising under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950. (The Longshore Act's judicial review and administrative modification provisions are specifically incorporated into the Black Lung Benefits Act. *See* 30 U.S.C. § 932(a).) Indeed, at least one court of appeals has referred to a black lung claimant's entitlement to benefits as "the ultimate fact." *Keating v. Director, OWCP*, 71 F.3d 1118, 1122–23 (3d Cir.1995). *See also Betty B Coal Co.*, 194 F.3d at 497 ("[A]ny mistake of fact may be corrected, including the ultimate issue of benefits eligibility"). *Compare Amax Coal Co. v. Franklin*, 957 F.2d 355, 357–58 (7th Cir.1992) (noting that the question of whether a miner had black lung disease is not one of "fact[ ] in the lay sense," but observing that the question is nevertheless treated as one of fact for the purposes of deciding whether a "mistake in a determination of fact" has been made).

 In any event, it is well-settled that under 20 C.F.R. § 725.310, a district director has "broad discretion to correct mistakes of fact, whether demonstrated by wholly new evidence, cumulative evidence, or merely further reflection on the evidence initially submitted." *Consolidation Coal Co. v. Worrell*, 27 F.3d 227, 230 (6th Cir.1994) (*quoting O'Keeffe v. Aerojet-General Shipyards, Inc.*, 404 U.S. 254, 256, 92 S.Ct. 405, 30 L.Ed.2d 424 (1971)). "If a claimant merely alleges that the ultimate fact (disability due to pneumoconiosis) was wrongly decided, the [district director] may, if he chooses, accept this contention and modify the final order accordingly. 'There is no need for a smoking-gun factual error, changed conditions, or startling new evidence.'" *Id.* (*quoting Jessee v. Director, OWCP*, 5 F.3d 723, 725 (4th Cir. 1993)). *See also Betty B Coal Co.*, 194

F.3d at 497 (noting that the "modification procedure is extraordinarily broad, especially insofar as it permits the correction of mistaken factual findings"); *Amax Coal Co. v. Franklin*, 957 F.2d 355, 358 (7th Cir.1992) (describing a new doctor's report, submitted after the denial of a claim, as "new evidence, albeit evidence about the accuracy of the original determination of an ultimate rather than elementary fact," and noting that although such evidence "could not be presented on appeal, [it] should be allowed to be considered as a ground for reopening the case" through modification).

This standard is far more liberal than, for example, the standard that governs motions for reconsideration under the Federal Rules of Civil Procedure. *Compare Glendon Energy Co. v. Borough of Glendon*, 836 F.Supp. 1109, 1122 (E.D.Pa.1993) (noting that a motion for reconsideration under the Federal Rules is not properly founded on a request that the Court "rethink what [it] had already thought through—rightly or wrongly.") (citation omitted) *with Jonida Trucking, Inc. v. Hunt*, 124 F.3d 739, 743 (6th Cir.1997) (noting that in black lung benefits cases, the "fact-finder has the authority, if not the duty, to rethink prior findings of fact and to reconsider all evidence . . . ."). The March 28, 1990 letter, therefore, does not disclaim Evelyn Milliken's entitlement to modification based on "a mistake in a determination of fact."

In sum, the district director's decision to treat the February 5, 1990 letter as a request for modification was not erroneous in view of the very low standards for what can suffice as a request for modification.

**D. Abandonment on appeal of the widow's presumption**

 Y&O next argues that by not asserting in her appeal from the ALJ's 1986 order denying benefits—and in her brief defending the Board's subsequent decision before this court—that the ALJ committed reversible error by failing to address her

argument that she was entitled to benefits under the "widow's presumption," Evelyn Milliken "accepted that incorrect adjudication." For this proposition, Y&O relies upon *Pittston Coal Group v. Sebben*, 488 U.S. 105, 109 S.Ct. 414, 102 L.Ed.2d 408 (1988).

*Sebben*, however, was a case in which the claimants failed to pursue administrative remedies or judicial review until after the time for remedies or review had passed. *See* 488 U.S. at 121, 109 S.Ct. 414. The decisions about which they complained had thus become final. *Sebben* simply recognized that the writ of mandamus could not be used to force the Benefits Review Board to reopen a case that had become final, even if incorrectly decided. *See id.* at 122, 109 S.Ct. 414.

The writ of mandamus pursuant to 28 U.S.C. § 1631 is an extraordinary remedy and "will issue only to compel the performance of 'a clear nondiscretionary duty.'" *Sebben*, 488 U.S. at 121, 109 S.Ct. 414 (citation omitted). Clearly, the Board has no "clear nondiscretionary duty" to allow claims to be serially readjudicated after the time for administrative remedies and judicial review has passed. If it did, then no decision of the Board would ever be final. An aggrieved party could simply petition for mandamus and allege a breach of the Board's duty to adjudicate the case correctly, no matter how untimely the petition. No rational system of adjudication would permit this. *See id.* ("This is not the way the law works.") But it does not follow that *Sebben* prohibits the Board from reconsidering claims that it erred when those claims are asserted before the time has expired for administrative remedies and judicial relief.

■■■ It is true that arguments not raised in the proponent's opening brief on appeal are generally considered abandoned. *See, e.g., Robinson v. Jones*, 142 F.3d 905, 906 (6th Cir.1998) (noting that the court of appeals would not consider twelve of thirteen *Bivens* claims asserted by the plaintiff because he only challenged on appeal the dismissal of his thirteenth claim). The Board has a similar rule. *See Niazy v. Capital Hilton Hotel*, No. 87–162, 19 Ben. Rev. Bd. Serv. 266, 1987 WL 107372, at *5 (1987) (refusing to consider discovery issues raised before the ALJ but not on appeal). This rule, however, is prudential and not jurisdictional. *See Dorris v. Absher*, 179 F.3d 420, 425 (6th Cir. 1999) (noting that "the court may choose to entertain arguments not raised by the parties when the failure to do so would constitute a miscarriage of justice"); *Mayhew v. Allsup*, 166 F.3d 821, 823–24 (6th Cir.1999) (considering the application of a statute helpful to the defendant despite his failure to address it either at trial or on appeal); *Mansfield v. Director, OWCP*, 8 BLR 1–445, 1986 WL 66303, at *1 (1986) (noting, in a black lung benefits case, that "if necessary to reach the correct result and fundamental to the fair administration of the Act, we will sua sponte consider points not raised by any party").

The error about which Evelyn Milliken complained was the first ALJ's failure to consider the applicability of the widow's presumption, which appears not only in the regulations, but in identical form in the authorizing statute itself. Moreover, she argued before the first ALJ that the presumption applied. As discussed in Part C above, neither the later ALJ nor the Board was precluded by this court's prior mandate from considering the argument. We discern no reversible error in the Board's decision to do so.

## E. The ALJ's "reweighing" of the evidence

■■■ Y&O argues that the ALJ in 1997 improperly "just reweighed the evidence" considered by the ALJ in 1986 without identifying what Y&O considers "any determination of any mistake in a prior determination of fact." As noted in Part C above, however, an ALJ has the right to reweigh the evidence when considering a timely request for modification pursuant to 20 C.F.R. § 725.310 regardless of whether the issue of disability due to

pneumoconiosis is labeled one of "law," "fact," or "ultimate fact." *See, e.g., Worrell*, 27 F.3d at 230.

Y&O suggests that this will "open the proverbial floodgates of litigation" and in many instances will harm claimants, because employers aggrieved by an ALJ's order awarding benefits could serially request modifications, with the result that "Black Lung claims would *never* end." Reluctant as we are to do anything to further prolong the snail-like pace of black lung benefits cases, *see, e.g., Peabody Coal Co. v. Director, OWCP*, 165 F.3d 1126, 1127 (7th Cir.1999) (describing a twenty-three year-old black lung case as "typically protracted"); *Old Ben Coal Co. v. Scott*, 144 F.3d 1045, 1046 (7th Cir.1998) (complaining that a twenty-two year-old black lung case "has dragged out appallingly"); *Amax Coal Co. v. Franklin*, 957 F.2d 355, 358 (7th Cir.1992) (describing a fourteen year-old black lung case as "unconscionably protracted" and noting that "[s]uch delay is not easy to understand"), we cannot accept Y&O's argument.

■ For one thing, as noted in Part C above, the Supreme Court in *O'Keeffe* defined the scope of the modification remedy under 33 U.S.C. § 922, and we obviously cannot amend the statute or disregard the way the Supreme Court has interpreted it. That aside, the district director's authority to review compensation cases is discretionary. *See, e.g.*, 33 U.S.C. § 922 (providing that a district director "may ... review a compensation case"); *Amax Coal Co.*, 957 F.2d at 357 (noting that under 33 U.S.C. § 922, as with requests for reconsideration generally, "[m]otions to reopen or reconsider are appeals to the discretion of the judicial or other officer to whom the motion is made"). *Compare Betty B Coal Co.*, 194 F.3d at 500 (noting that "never-say-die" litigants who abuse the modification procedure by filing repetitive requests for modification are highly unlikely to ultimately prevail on the merits). One must presume that the district directors will be able to exercise their discretion intelligently, and in a manner that will bring an appropriate level of finality to black lung benefits decisions. If they cannot, the coal mining employers' recourse is with the "authorities who can do something about it." *C&K Coal Co. v. Taylor*, 165 F.3d 254, 258 (3d Cir.1999) (citation omitted).

We also cannot accept Y&O's argument that allowing the ALJ to rethink his conclusions renders either the regulation governing ALJ reconsideration, 20 C.F.R. § 725.479(b), or the regulation governing duplicate black lung claims, 20 C.F.R. § 725.309, meaningless. Y&O reasons that because there is a regulation that permits aggrieved parties to petition the ALJ for reconsideration within thirty days after the ALJ files his decision and order, modification under 20 C.F.R. §§ 725.310 and 725.480 could not give an aggrieved party a full year in which to ask the ALJ simply to rethink his conclusions, because then the one-month time limit of 20 C.F.R. § 725.479(b) would be a nullity. The flaw in this argument is that it overlooks the fact that within thirty days of the ALJ's ruling, an aggrieved party can take up a request for reconsideration directly with the ALJ. After the thirty-day period expires (but before one year elapses), an aggrieved party is required to return almost to square one, because the request for modification under 20 C.F.R. § 725.310 must be addressed to the district director, and thus entails an appeal to another decisionmaker's discretion.

■ Once a year has passed, the time for modification has run and res judicata will bar subsequent challenges to the correctness of the adjudication. In order to prevail, an aggrieved claimant would need to demonstrate a "material change in conditions," *see* 20 C.F.R. § 725.309(d), which means that the claimant cannot disturb the now-final adverse adjudication, even if the claimant could establish that it was incorrectly decided. Rather, the claimant would have to demonstrate "that the miner did not have black lung disease at the time of the first application but has since contracted it and become totally disabled by

it, or that his disease has progressed to the point of becoming totally disabling although it was not at the time of the first application." *Sahara Coal Co. v. OWCP, United States Dep't of Labor*, 946 F.2d 554, 556 (7th Cir.1991).

Moreover, the present case is not one in which the aggrieved claimant simply "secur[ed] new [medical] opinion evidence," as Y&O argues, and sought modification. This is a case in which the ALJ in 1986 failed to consider the applicability of a presumption that appears not only in the regulations but in the statute itself.

### F. Harmless error by the 1986 ALJ

Finally, Y&O argues that the ALJ to whom this case was originally assigned in 1986 made a decision as the factfinder to credit the opinion of a medical expert, Dr. Kress, who had opined that when Harold Milliken died, his level of pneumoconiosis was too minimal to have been the cause of any disability. The ALJ thus found as a fact that neither Harold Milliken's death nor his disability was caused by pneumoconiosis. Y&O argues that this factual finding rendered the ALJ's failure to consider the applicability of the widow's presumption harmless error, because such a finding would be sufficient to rebut the widow's presumption.

The 1986 ALJ's decision and order, however, is not the one under review. Rather, it is the 1997 ALJ's decision and order that is before us. In the modification proceedings, the ALJ considered not only the evidence that had been submitted to the ALJ in 1986, but also a report submitted by an additional expert, Dr. Rasmussen, that critiqued the opinion of Dr. Kress. Dr. Rasmussen's opinion highlighted the inability of Dr. Kress to adequately explain Harold Milliken's respiratory symptoms. The 1997 ALJ's decision credited this report, and held that Y&O had failed to rebut the widow's presumption with evidence that Harold Milliken was "not partially or totally disabled due to pneumoconiosis" when he died. *See* 30 U.S.C. § 921(c)(5). That decision was af-

firmed by the Board. We believe, and Y&O in any event does not contest, that the ALJ's latest decision was also supported by substantial evidence.

### III. CONCLUSION

For all of the reasons set forth above, Y&O's petition for review is **DENIED.**

WELLFORD, Circuit Judge, dissenting.

Harold Milliken's widow filed for surviving spouse benefits under the Black Lung Benefits Act in 1975, more than a year following her husband's death. She was represented by counsel and presented evidence bearing upon her right to collect benefits. She had ample opportunity to present all her claims. An ALJ decided in early 1986, based upon medical opinions and the death certificate, that the primary cause of death was heart disease. The ALJ found that the deceased miner was not shown to be totally disabled by respiratory or pulmonary impairment at the time of death, although he smoked regularly for many years in addition to working around the mines.

The ALJ, in his 1986 findings, pointed to autopsy reports and analyses which indicated either no finding of pneumoconiosis, or, at best, "simple minimal coal workers' pneumoconiosis." None of the doctors opined the latter as contributing to the miner's death. The reports did indicate, however, the presence of carcinoma in the left lower lobe. Resolving considerable doubt on this issue of the presence of anthracosis or pneumoconiosis, the ALJ adopted the minority minimal indication. The ALJ concluded, however, that the employer had rebutted plaintiff's interim presumption that death was caused by this minimal indication of pneumoconiosis arising out of coal mine employment and that he was totally disabled by this condition at the time of his death. The final conclusion was that Milliken's disability and death "did not arise out of coal mine employment." The only competent medical evidence on the question at issue was that

"the minimum level of pneumoconiosis ... would make no contribution to his death." The Director's appeal from this decision was dismissed. After the Board first dismissed the widow's appeal as untimely on July 30, 1986, it later accepted a cross-appeal. This demonstrates the beginning of a pattern throughout this case: bending or ignoring the rules in favor of respondent. I dissent from any award of benefits, accordingly.

A divided Board, in January of 1988, reversed the ALJ based on its interpretation of Sixth Circuit law and 20 C.F.R. § 410.490 of the regulations. The case was appealed to this court, and we concluded in 866 F.2d 195 (6th Cir.1989), that the Board erred. Y&O, supported by the Director, successfully argued that the Board misinterpreted the regulations and Sixth Circuit law. Among other things, we held:

In this case, the only evidence regarding Milliken's pneumoconiosis consists of the autopsy report conducted by Dr. Karanjawala and the death certificate with an illegible entry of pneumoconiosis as a contributing cause of death. The autopsy report also revealed evidence of heart disease and cancer. The death certificate lists heart disease as the primary cause of death. Moreover, one physician claimed Milliken did not have pneumoconiosis and another found exceedingly mild pneumoconiosis that could not have caused disability or death. A review of the record indicates that the ALJ's finding of rebuttal is supported by substantial evidence. We decline to disturb those findings.
866 F.2d at 202–03.

One might assume that this decision, dated January 23, 1989, would have settled this controversy absent a reversal or remand by the Supreme Court or *en banc* consideration by the Sixth Circuit. No such later court action occurred, but now—ten years later—after a multitude of questionable procedural moves and actions by the Board and the agency, the majority decides that administrative actions and decisions may effectually overrule this 1989 decision of our court.[1] This is permitted by the majority in the guise of liberal construction for the benefit of the claimant.

The next action by respondent was to file a petition for rehearing, and a motion for enlargement of time, because, as conceded by the majority, "the time for filing a petition for rehearing had already elapsed." In this petition, respondent reviewed an argument she had raised before the ALJ in 1986, but not before the Board or the Sixth Circuit, based on the "widow's presumption." This court denied the petition, presumably having considered and rejected the arguments advanced. I would hold that respondent, under the circumstances, raised the "widow's presumption" issue but did not pursue it effectually, and failed in this contention before this court.[2]

In sum, I would hold that the 1989 decision of this court, coupled with denial of the petition for review on March 15, 1989, terminated respondent's claims under the Black Lung Benefits Act. But, there were many more unusual and, I believe, unau-

---

1. The majority concedes that

 The Supreme Court, in *Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 111 S.Ct. 2524, 115 L.Ed.2d 604 (1991), subsequently held, in apparent agreement with this court's 1989 opinion in this case, that the Labor Department regulations were not inconsistent with 30 U.S.C. § 902(f)(2) to the extent that they allowed the interim presumption to be rebutted with evidence demonstrating that the miner does not or did not have pneumoconiosis or that the miner's disability does not or did not arise out of coal mine employment.

2. Milliken did also fully present the "widow's presumption" issue, and moved to stay the mandate, mentioning a possible subsequent petition for certiorari. Y&O filed a memorandum contra to this action of plaintiff indicating a Board decision, *Freeman v. Old Ben Coal Co.*, 3 BLR 1–599, that foreclosed such claim under the findings of the ALJ in 1986.

thorized actions which took place administratively thereafter. I deem them unauthorized and improper because:

(1) The Secretary, an ALJ, and the Board cannot overrule the determination of this court.

(2) The "widow's presumption" issue was presented, although ineptly, in the administrative proceedings prior to, and in the Sixth Circuit (by the contested petition for review).

(3) The findings of the ALJ in 1986, not disturbed by the Board, foreclosed any successful outcome of the "widow's presumption" claim.

On February 5, 1990, more than fifteen years after Harold Milliken's death, and the issuance of a death certificate indicating that Milliken died from heart problems primarily and another "significant condition," carcinoma, Milliken's new attorney mailed to a claims examiner of the Department of Labor a letter "notice." It indicated that respondent did not appeal the Sixth Circuit decision, but that he would set forth grounds of "mistake" in that decision to be "more fully set forth in a modification request I am preparing." He contended that "the denial of her claim (not appealed) was not final." It should be pointed out that up to the time of the 1989 decision, respondent had been receiving black lung benefits, and by about 1980, respondent had been eligible for social security benefits.

The February 5, 1990 letter was *not* an appeal, but some kind of advance notice of a requested modification of the Sixth Circuit opinion based upon "mistakes." Prior respondent's counsel had sought to do this very thing by the rejected petition for review. Respondent, then, sought administratively to modify or overturn this court's decision which had affirmed an ALJ determination by means of this vague letter. In a somewhat similar context, this type of letter reference to modification was rejected in *I.T.O. Corp. v. Pettus*, 73 F.3d 523 (4th Cir.), *cert. denied*, 519 U.S. 807, 117 S.Ct. 49, 136 L.Ed.2d 14 (1996). The

court had this to say about this type of approach:

The Director of OWCP argues that § 922 allows threadbare letters, such as those sent by Pettus in September and December of 1989, to initiate the review process without any subsequent action on the part of the district director. We find this argument unpersuasive. Section 922's requirement that review commence within one year is not automatically fulfilled by just any communication from the claimant. A request for modification constitutes the commencement of review only if it is sufficient to initiate the process required under § 922, a process whose *next step must occur within ten* days of claimant's request for modification. While a claimant's application for modification need not meet any particular form, there must be *some basis* for a reasonable person to conclude that a modification request has been made.

*Id.* at 527 (emphasis added). As in the *Pettus* case, respondent's attorney's letter made no reference to any "change in [claimant's] condition" or to "additional evidence concerning claimant's disability," or, in this case, to the cause of death. *Id.* There was, furthermore, a "next step" in the process which "must occur within ten days." Pettus submitted a more particular letter request for modification which was adequate, but like Milliken's March 26 letter, it came too late.

We should not countenance, much less approve, such an action. Respondent's counsel followed through on March 28, 1990, with another letter to the claims examiner enclosing the post-decision filings in the Sixth Circuit which, he said, "sets forth the principal grounds of my February 5, 1990 Request." He proffered *no* newly discovered evidence, and he did not argue "previously litigated facts." It is apparent that he was contending that a mistake of *law* had been made; he was not contesting factual determinations, nor presenting new evidence, but asserting a

wrong legal determination by the Sixth Circuit.

There are several things to be said about these letters by respondent's new counsel. The District Director rejected the February 5, 1990 communication as untimely. This should have ended the matter. Instead, as pointed out by the majority, the Director then changed course. Three courts have held that the Director "is without statutory authority under 33 U.S.C. § 922 [dealing with modification of black lung awards] to propose modifications for any mistaken determinations of fact other than his own." *Director v. Kaiser Steel Corp.*, 860 F.2d 377, 379 (10th Cir.1988). *See also Director v. Peabody Coal Co.*, 837 F.2d 295 (7th Cir.1988); *Director v. Drummond Coal Co.*, 831 F.2d 240 (11th Cir.1987). This circuit's case of *Saginaw Mining Co. v. Mazzulli*, 818 F.2d 1278 (1987), was deemed inapposite in *Kaiser Steel* to this particular issue. *Saginaw Mining* simply held that "a claimant for benefits under the BLBA must file with a deputy commissioner, rather than an ALJ, a request for modification of *an ALJ decision.*" 818 F.2d at 1283 (emphasis added). *Saginaw Mining* did *not* involve an ALJ decision that had been reviewed without a challenge to the facts by the Board, and which decision had been *affirmed* by this court.[3] I would hold that the Director had no authority, under these circumstances, to entertain a request for modification based on a claimed mistake of fact.

Section 922 limits modification to "a change in conditions," not demonstrated in this case, or "because of a mistake in a determination of fact by the deputy commissioner." 33 U.S.C. § 922. The Director in this case stands § 922 on its head as does the majority in overturning effectively ("modifying") through administrative gyrations the prior decision of this court. As stated, there is no authority for the Director (much less a claims examiner) to consider a modification of a Sixth Circuit

judgment based on a purported "mistake" of fact, when respondent offered no new evidence nor a dispute over litigated facts. This is apart from the controversy as to whether the request for modification was timely.

The February 5, 1990 communication was not a request for modification nor did it set forth grounds. The first purported request was March 28, 1990, and this was untimely. This is an additional basis for rejection of the ultimate, subsequent administrative decision favoring respondent. Furthermore, respondent demonstrated no *factual* error in the ALJ decision affirmed by this court, nor in any factual determination made by this court in 866 F.2d 195. The time limit for filing expired, at the latest, on March 23, 1990. I would hold that the time period expired a year from the earlier date of the judgment of the Sixth Circuit, January 23, 1989.

The majority attempts to convert what clearly is a claim by respondent that a mistake of law occurred by suggesting that the ultimate determination by the ALJ, and by this court, that Milliken's claim be denied.

Despite the deficiencies in the process, there was a subsequent decision administratively to deny the requested modification in 1993. The Board, in 1995, reversing and remanding the sound decision of the ALJ, which ratified the rationale of the 1986 ALJ determination, observed about the timeliness of the modification request:

> [C]laimant's February 5, 1990 letter to Claims Examiner Michael McClaran is sufficient notification of claimant's intention to request modification of her denied claim, by stating that the formal petition for modification was being prepared for filing with the district director [similar to the previous term, deputy commissioner].

**3.** *Saginaw Mining* discussed modification proceedings based upon the facts in that case: should a claimant file a modification request in a pending proceeding with the ALJ pending

a Board Review or with the deputy commissioner in order to present new evidence. This is inapposite to the issues before us in this controversy.

The only import of the February 5, 1990 letter in controversy was that it stated that a petition for modification *was being prepared.* Will we permit indefinite extensions of statutory time limits by some vague indication, without specifying reasons, that a petition is being prepared for filing sometime in the future? This judge certainly hopes that we will not countenance such winking and shrugging-off of the demands of the law which, after all, set an ample one-year limit. The Board was in error in disregarding that this court had affirmed the 1986 findings—there was no erroneous "finding [of fact] rendered by an administrative law judge" in 1986. *Consolidation Coal Co. v. Worrell,* 27 F.3d 227 (6th Cir.1994), simply holds that a deputy commissioner may "rethink a prior finding of fact at any time *during the first year* after a final order." *Id.* at 230 (emphasis added). *Worrell,*[4] however, did not involve a final order of this court ratifying and affirming a prior ALJ determination of fact. No case cited by the majority involves the circumstances involved in this case, attempted modification of a judgment of a court of appeals by a later, long delayed action of an administrative agency. Nothing by way of adequate request for modification, in any event, it occurred within the one year permitted. Respondent even sought, properly I believe, by a petition for review and answered by Y&O, to raise the new contention in the Sixth Circuit, but this was denied and should have ended any administrative modification effort.

In the Board's 1995 holding moreover, the alleged error in the 1986 ALJ decision was "in failing to apply the presumption set forth in Section 727.204, see Section 411(c)(5) of the Act." Unquestionably, if this was error, it was an error of law, not of fact, and was not subject to modification.

The only new evidence of any import introduced at a modification hearing was a "consultive medical report by Dr. D.C. Rasmussen." This came about seventeen years after Milliken's death and medical evidence much more current and relevant to the pertinent times.

The 1997 ALJ decision, on remand, affirmed by the Board this time, required Y&O to establish that Milliken was not, at death, partially or totally disabled by pneumoconiosis. At the time of death, Milliken had already retired. In his analysis of Dr. Rasmussen's consultive report, the ALJ noted that (1) "the record did not contain pulmonary function studies, and that it is impossible to determine whether the miner suffered impairment of lung function as a result of pneumoconiosis," and (2) "the anatomical evidence is insufficient to establish or disconnect a link between the miner's symptoms and pneumoconiosis." It is difficult to see how Dr. Rasmussen added anything to the extensive previous discussions of other doctors indicating, at *most,* minimal signs of pneumoconiosis but major symptoms of heart disease and cancer that brought about Milliken's death. Coupled with these conditions were broken ribs that caused breathing problems and long-term smoking.

On the merits of the case, then, I would not disturb the earlier fact findings and conclusions of the ALJ in 1986 and this court's judgment. Respondent abandoned or waived her widow's presumption argument before our court before filing a petition to review. There was no miscarriage of justice in those decisions by any stretch. The earlier ALJ decision, based on essentially the same facts and circumstances, was that "neither Milliken's death or disability was caused by pneumoconiosis." That was affirmed by the Sixth Circuit. That precludes a proposed finding of factual error or any basis for modification under the circumstances.

I must express my concern that the majority opinion extends, without any

---

4. *Worrell* involved study of new medical evidence and conflicting medical studies, unlike the situation in the instant case.

sound basis, any prior court law and thus allows a kind of extended and haphazard procedure, without any effective limitation, to allow modification of a circuit court decision. This majority view certainly encourages parties who fail to exercise due diligence in pursuing their claims or defenses to become " 'never-say-die' litigators who abuse the modification procedure by filing repetitive requests."

I would **REVERSE** the granting of benefits in this case.